[No. A026343. First Dist., Div. Two. June 16, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
MARVIN HARRIS, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, II and IV.

COUNSEL

Jean R. Sternberg, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Martin S. Kaye, Dane R. Gillette and Landra E. Rosenthal, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

BENSON, J.—A jury found Marvin Harris guilty of the first degree murder of June Azevedo. It also determined that the murder was committed during the commission or attempted commission of a robbery and a kidnapping. Although the jury fixed defendant's penalty at death, the court reduced the death sentence to life without possibility of parole. Pursuant to *People* v. *Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748] and *People* v. *Turner* (1986) 42 Cal.3d 711 [230 Cal.Rptr. 656, 726 P.2d 102], we reverse the judgment.

### I, II*

. . . . . . . . . . . . . . . . . . . . . . .

### III

 The reversal of the judgment of conviction because of *Wheeler* error (*People* v. *Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748]) has necessarily mooted many issues raised by defendant relating to jury selection and composition. However, several evidentiary issues are tendered which may become germane on retrial and we elect to address those issues for the future guidance of the trial court.

First in this category is the question of the propriety of the prosecution's use of Dr. Martin Blinder as a rebuttal witness. Defendant maintains that his testimony was inadmissible under the federal and state constitutions. To address the issue we are obliged to briefly set forth certain factual material leading up to his testimony.

On September 16, 1981, during a routine pretrial hearing, the following exchange took place between the court and Mr. Merrill, defendant's trial counsel at the time:

"[THE COURT:] The court, Mr. Merrill, on its own motion is going to appoint a doctor to examine this defendant. I'm doing that because of the comments that were made and the statements that were made and the method and manner in which the defendant responded when he last appeared before me about a week or so ago, and I'm not going to ask the doctor in any way to discuss the nature of the offense with the defendant—

---

* See footnote, page 943, *ante.*

"MR. MERRILL: Fine.

"THE COURT:— or in any way infringe upon the rights of the defendant to not in any way incriminate himself; but I do want to have the doctor examine the defendant and report to me the mental status of the defendant as to whether he is able to understand the charges, whether he is able to cooperate and assist with counsel, and whether there is any other mental status situation that might interfere with the trial.

"That examination will, of course, be conducted by the doctor after I've made the appointment. That report will be lodged privately with the Court, and depending upon its contents, I will determine whether it will be revealed or not, as the case might be.

". . . . . . . . . . . . . . . . ". . . .

"MR. MERRILL: ... Your Honor, I'm going to suggest, though, that before the doctor examines him, you kind of tell me after you decide who the doctor is and whose [sic] going to examine him. Let me know so I can talk to Mr. Harris and he will talk to him.

"THE COURT: All right. I'll be happy to do that.

"MR. MERRILL: I've suggested to Mr. Harris he shouldn't talk to anybody about this case. He hasn't always been successful, but it might cause some problems in this particular matter, if you know what I mean.

"THE COURT: I'll be happy to."

Unfortunately, the record does not disclose the name of the doctor appointed by the court to conduct this examination. However, the record does disclose a written report submitted to the court on September 23, 1981, which was prepared by Dr. Blinder and which relates to his examination of the defendant. We are thus able to conclude, as did the trial court, that Dr. Blinder was the appointed physician.

Shortly after this proceeding, the trial was stayed as a result of pretrial venue proceedings.

On July 6, 1983, the trial court after expressing doubt on the record as to the defendant's capacity to understand the nature and purpose of the proceedings against him and to assist and cooperate with counsel, again appointed Dr. Blinder to examine the defendant pursuant to Penal Code

section 1369.[11] Dr. Blinder reported to the court that he had attempted to interview the defendant and the latter had refused to speak with him.

A mental competency trial began on August 10, 1983, and on August 16 defendant was found competent to stand trial.

On January 11, 1984, prior to the start of the prosecution's rebuttal case, defense counsel learned that the prosecutor was planning to call Dr. Blinder as a witness. Defendant objected, claiming that his communications to Dr. Blinder were privileged. Defense counsel also noted that there was no indication that defendant had been advised of his *Miranda* rights (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) prior to his conversation with the psychiatrist. The court denied defendant's motion to exclude the testimony and request to voir dire Dr. Blinder as to what admonitions, if any, he delivered to defendant. In making its ruling, the court announced that it had reviewed all the authorities provided it by defendant and had taken judicial notice of the transcript and the minute order of September 16, 1981, wherein Dr. Blinder was appointed by the court and "directed to report to the Court concerning the defendant's mental state then and at the time of the offense."[12]

Before Dr. Blinder was permitted to testify as to defendant's statements to him, the court admonished the jury that "any statements made by Mr. Harris to Dr. Blinder are not to be received for the truth of the matters asserted in the statements by the defendant but only to advise you, if it does, as the basis for Dr. Blinder's opinions."

Thereafter, Dr. Blinder testified in detail concerning his interviews with defendant, defendant's statements to Dr. Blinder about the offense and his observations of defendant. The psychiatrist stated that defendant had told him that on the day June Azevedo was abducted he had spent the day at his girlfriend's house. When he started home from her house, he saw a couple of friends driving a Lincoln Continental and asked whether he might join them. He got into the car and found that they were holding a woman captive on the floor of the car. They then drove out of town, parked, and his two friends beat the woman. The friends then threw her out of the automobile and forced Pine-Sol down her throat. Defendant told Dr. Blinder that

---

[11] All statutory references are to the Penal Code unless otherwise indicated.

[12] There is nothing in the record to support the trial court's view that the September 16, 1981, minute order authorized Dr. Blinder to report on defendant's mental state at the time of the offense. However, the July 6, 1983, order appointing doctors for the section 1368 trial requested an evaluation of defendant's ability to deliberate, premeditate, harbor malice and reflect on the gravity of his contemplated acts at the time of the offense in addition an evaluation of defendant's ability to stand trial.

he did not object to what his friends were doing since they were bigger than him. Dr. Blinder also testified that in his opinion defendant had the capacity to be violent and suffered no mental or emotional disability which would prevent him from committing the crime for which he was charged.

Defendant maintains that admission of Dr. Blinder's testimony violated two constitutional protections; i.e., the state and federal protections against compelled self-incrimination and the prophylactic requirement that an accused be advised of his right to remain silent and that anything he said can and will be used against him.

In *Tarantino v. Superior Court* (1975) 48 Cal.App.3d 465 [122 Cal.Rptr. 61], the Court of Appeal determined that compelling a defendant to submit to an examination by a court-appointed psychiatrist pursuant to section 1367 et seq. did not violate the right against self-incrimination, *as long as a judicially declared rule of use immunity, to be reasonably implied from the code provisions, existed. (Id.* at pp. 469-470.) ■ The court held that "neither the statements of [an accused] to the psychiatrists appointed under section 1369 nor the fruits of such statements may be used in trial of the issue of . . . guilt, under either the plea of not guilty or that of not guilty by reason of insanity." *(Id.* at p. 470.) The *Tarantino* holding was approved and adopted by our Supreme Court in *People* v. *Arcega* (1982) 32 Cal.3d 504 [186 Cal.Rptr. 94, 651 P.2d 338]. As the *Arcega* court explained: "This rule is necessary to ensure that an accused is not convicted by use of his own statements made at a court-compelled examination. The rule also fosters honesty and lack of restraint on the accused's part at the examination and thus promotes accuracy in the psychiatric evaluation. Hence, the rule protects both an accused's privilege against self-incrimination and the public policy of not trying persons who are mentally incompetent." *(Id.* at p. 522.) Citing *Estelle* v. *Smith* (1981) 451 U.S. 454 [68 L.Ed.2d 359, 101 S.Ct. 1866], the *Arcega* court also recognized that under the United States Constitution, the Fifth Amendment privilege against self-incrimination is generally applicable to custodial mental competency examinations, and that a state may not introduce at the penalty phase of a capital case evidence of statements made by an accused at a custodial mental competency examination unless the accused has been informed of and has waived his *Miranda* rights.

■ Citing footnote 10 in *Estelle,* respondent argues that the above-stated rules are only applicable where a defendant has not presented psychiatric testimony in his defense; where the defense offers expert testimony, his self-incrimination privilege and/or immunity under section 1368 are waived. The Fifth District Court of Appeal appears to have adopted a similar stance when it held that a criminal defendant who takes the stand to testify on his own behalf may be impeached by testimony from a psychia-

trist appointed to examine the defendant pursuant to section 1368. (See *People* v. *Stanfill* (1986) 184 Cal.App.3d 577 [229 Cal.Rptr. 215].) We disagree with both views.

Preliminarily, we observe that footnote 10 of *Estelle* made reference to the lower court of appeal decision in that case, noting that the court had "carefully left open 'the possibility that a defendant who wishes to use psychiatric evidence in his own behalf [on the issue of future dangerousness] can be precluded from using it unless he is [also] willing to be examined by a psychiatrist *nominated by the state*.' [Citation.]" (*Estelle* v. *Smith, supra,* 451 U.S. at p. 466, fn. 10 [68 L.Ed.2d at p. 371], italics supplied.) However, this quotation does not necessarily imply that the psychiatrist nominated by the state be the same psychiatrist who conducted the competency examination.

As previously stated, the *Tarantino* court had no hesitancy in declaring that the statements of a defendant to the psychiatrist appointed under section 1369 could not be used in the trial of the issue of the defendant's guilt, "under either the plea of not guilty or that of not guilty by reason of insanity." (*Tarantino* v. *Superior Court, supra,* 48 Cal. App.3d at p. 470.) The court then recognized that the immunity granted by the court will require that the psychiatrist appointed for examination under section 1367 et seq. be other than those appointed for inquiry concerning the defendant's mens rea at the time of the offense. (*Ibid.*) Accordingly, we have no difficulty in requiring that in the event the prosecution wishes to rebut defense testimony concerning the defendant's mental capacity to commit an offense, the prosecution must conduct a psychiatric examination using psychiatrists or psychologists other than those who examined the defendant for the purposes of determining competency to stand trial.

We also find the reasoning of *Stanfill,* i.e., that any defendant who takes the stand to testify in his own behalf waives the privilege against self-incrimination, inapposite when applied to section 1368 proceedings. First, as respondent acknowledges, a *Miranda* admonishment is inappropriate where the trial court impliedly, or in this case explicitly, indicates, contrary to *Miranda,* that the defendant's statements during a section 1369 examination *cannot* be used against him. The granting of such immunity renders the giving of *Miranda* warnings unnecessary. However, if, as *Stanfill* suggests, a judicial grant of immunity need not be honored in the event the defendant takes the stand, the result not only undermines judicial assurances but violates the accused's right to due process notice concerning the privilege against self incrimination.

As was stated in *Tarantino,* the sole purpose of section 1367 et seq. "is the humanitarian desire to assure that one who is mentally unable to defend

himself not be tried upon a criminal charge. This purpose is entirely unrelated to any element of guilt, and there is no indication of any legislative intent that any result of this inquiry into a wholly collateral matter be used in determining the issue of guilt." (*Tarantino* v. *Superior Court, supra,* 48 Cal.App.3d at p. 469.) We consequently hold that statements made by a defendant during the course of a competency examination may not be used for impeachment purposes at any proceedings other than those conducted pursuant to title 10, chapter 6 of the Penal Code.

On retrial Dr. Martin Blinder may not testify as to defendant's mental status either in the prosecution's case in chief or as a rebuttal witness.

IV*

. . . . . . . . . . . . . . . . . . . .

The judgment is reversed.

Kline, P. J., and Rouse, J., concurred.

A petition for a rehearing was denied July 16, 1987, and respondent's petition for review by the Supreme Court was denied October 1, 1987.

---

* See footnote, page 943, *ante.*