[No. A036459. First Dist., Div. Five. Jan. 28, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
HENRY WILLIAMS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Part II is not ordered published, as it does not meet the standards for publication contained in California Rules of Court, rule 976(b).

**COUNSEL**

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Catalina Lozano, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Herbert F. Wilkinson and Karl S. Mayer, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KING, J.**—In this case we hold that when a court-appointed psychiatrist examines a defendant for the purpose of testifying in the sanity phase of a bifurcated trial, defendant's constitutional privilege against self-incrimination is violated by allowing the psychiatrist to testify in the guilt phase that defendant confessed his guilt during the examination, when defendant has not placed his mental state at issue in the guilt phase of the trial.

Henry Williams pleaded not guilty and not guilty by reason of insanity to 10 counts of arson (Pen. Code, § 451) allegedly committed in May and June 1985.[1] The court appointed Drs. Collins and Glathe to examine him pursuant to Penal Code sections 1026-1027. When Dr. Glathe's report was filed with the court Williams requested resubmission of the insanity issue and the same doctors were reappointed "to examine the defendant's past psychiatric records and if necessary to re-examine the defendant," again under Penal Code section 1027. At the end of the guilt phase of the trial, after final arguments had been made to the jury, the trial court—having just received Dr. Glathe's supplemental report—allowed the prosecutor to reopen the case for Glathe to testify Williams had confessed to the charged crimes.[2]

---

[1] When Williams's motion to set aside count four (Pen. Code, § 995) was granted the counts were renumbered one through nine.

[2] The trial court stated, "A criminal trial is not a game. I think the jury is entitled to know the truth in this matter."

Dr. Glathe testified he interviewed Williams in the San Mateo County jail on the evening of August 19, 1986. According to his notes of the conversation, "I asked him why he was in

The jury found Williams guilty on all counts and as to each offense—after the two-day sanity phase—found him sane at the time of commission. Based on examination reports ordered pursuant to Penal Code sections 1367-1368, the court found Williams competent and sentenced him to 17 years.[3]

## I

▮ Williams contends admission of Dr. Glathe's testimony at the guilt phase of his trial violated his privilege against self-incrimination.[4] In *In re Spencer* (1965) 63 Cal.2d 400, 412 [46 Cal.Rptr. 753, 406 P.2d 33], where the trial court permitted an alienist appointed to examine defendant pursuant to his insanity plea to testify at the guilt phase of the trial, the Supreme Court stated, "If, after submitting to an examination, a defendant does not specifically place his mental condition into issue at the guilt trial, then the court-appointed psychiatrist should not be permitted to testify at the guilt trial." A plea of not guilty by reason of insanity does not place defendant's mental condition in issue at the guilt phase of a bifurcated trial (Evid. Code, § 1026), as the *Spencer* court recognized in alluding to "such defenses as 'diminished capacity' or epilepsy." (*Id.,* at p. 412, fn. 10.)[5]

Although *Spencer's* safeguards were originally enunciated to preserve the right to counsel, they have since been invoked in the context of the privilege

jail, and he responded that 'they say I caused fires.' And I asked him if he did. I asked, 'Did you?' And he responded, 'Yeah.' . . . Then I went on to ask him when this occurred. He said between May, June and July of 1985. I asked him how many, and he said a bunch of them." Glathe admitted he had no way of knowing whether the fires confessed to were those charged in this case. He did not indicate the confession was the basis of his expert opinion as to Williams's mental state, nor in fact did he offer any such opinion.

[3] Enhancements for property damage (Pen. Code, § 12022.6, subd. (b)) were stayed, but the sentence includes a five-year prior conviction enhancement. (Pen. Code, § 667.) The Attorney General asserts the trial court actually meant to impose a total of 19 years. Any nonconformity between the pronouncement of sentence and the abstract of judgment is moot since we reverse the judgment of conviction.

[4] He seems to assert the psychotherapist-patient privilege (Evid. Code, § 1010 et seq.) as well, but the trial court properly rejected this argument under Evidence Code section 1017 which provides in pertinent part, "There is no privilege under this article if the psychotherapist is appointed by order of a court to examine the patient."

[5] In *People* v. *Ditson* (1962) 57 Cal.2d 415, 447-448 [20 Cal.Rptr. 165, 369 P.2d 714], where the court held guilt phase use of statements to an alienist appointed pursuant to Penal Code section 1027 did not violate the privilege against self-incrimination, the elicited information was relevant and material to the issue of whether an epileptic seizure precluded defendant from harboring the requisite specific intent for first degree murder. Thus the Attorney General's reliance on *Ditson* is misplaced. The *Spencer* court also relied on *Ditson,* as well as on *People* v. *Combes* (1961) 56 Cal.2d 135, 149 [14 Cal.Rptr. 4, 363 P.2d 4], to reject the contention that guilt-trial psychiatric testimony found to violate the right to counsel also violated the protection against self-incrimination. (*In re Spencer, supra,* 63 Cal.2d at p. 409, citing the absence of a United States Supreme Court decision compelling a contrary result.) In light of *Estelle* v. *Smith* (1981) 451 U.S. 454 [68 L.Ed.2d 359, 101 S.Ct. 1866] (discussed *infra* at p. 1325) it is questionable whether these holdings survive *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

against self-incrimination as well. (See, e.g., *People* v. *Danis* (1973) 31 Cal.App.3d 782, 785-786 [107 Cal.Rptr. 675]; *People* v. *Slone* (1978) 76 Cal.App.3d 611, 626-629 [143 Cal.Rptr. 61]; *People* v. *Arcega* (1982) 32 Cal.3d 504, 521 [186 Cal.Rptr. 94, 651 P.2d 338].) In *Tarantino* v. *Superior Court* (1975) 48 Cal.App.3d 465, 469-470 [122 Cal.Rptr. 61], the court held compulsory examination by court-appointed psychiatrists to determine defendant's competence to stand trial (Pen. Code, § 1368) did not violate his right not to incriminate himself, "at least under a judicially declared immunity reasonably to be implied from the code provisions," to wit, "that neither the statements of petitioner to the psychiatrists appointed under section 1369 nor the fruits of such statements may be used in trial of the issue of petitioner's guilt, under either the plea of not guilty or that of not guilty by reason of insanity."

As the Supreme Court explained in *People* v. *Arcega, supra,* 32 Cal.3d at page 522, the *Tarantino* rule "is necessary to ensure that an accused is not convicted by use of his own statements made at a court-compelled examination. The rule also fosters honesty and lack of restraint on the accused's part at the examination and thus promotes accuracy in the psychiatric evaluation." The *Arcega* court adopted and applied the *Tarantino* rule even though the defendant had tendered a diminished capacity defense, albeit without benefit of expert testimony. (32 Cal.3d at p. 510; accord, *People* v. *Harris* (1987) 192 Cal.App.3d 943 [237 Cal.Rptr. 747], rejecting in dicta the holding in *People* v. *Stanfill* (1986) 184 Cal.App.3d 577, 581 [229 Cal.Rptr. 215], that the privilege is waived where defendant testifies on his own behalf.)

Both *Tarantino, supra,* 48 Cal.App.3d at page 469, and *Arcega, supra,* 32 Cal.3d at page 521, distinguish between competency and insanity exams. Since the purpose of the former is "entirely unrelated to any element of guilt," (48 Cal.App.3d at p. 469) and concerns the defendant's mental state only at the time of trial or sentencing, *Tarantino's* immunity is broader than *Spencer's,* which exists only so long as defendant's mental state at the time of the crime is not in issue. In all other respects however, the rationale of *Tarantino* and *Arcega* applies equally to an examination compelled by Penal Code section 1027. Since Williams did not put his mental state in issue at the guilt phase, the admission of Dr. Glathe's testimony violated his constitutional privilege against self-incrimination.

The Attorney General contends the judicially created rules of *Spencer* and *Arcega* have been abrogated by the Truth-in-Evidence provision of Proposition 8 (Cal. Const., art. I, § 28, subd. (d).) On the contrary, to the extent they are mandated by article I, section 15 of the California Constitution (see *People* v. *Arcega, supra,* 32 Cal.3d at pp. 522-523), they have

survived Proposition 8. (*Ramona R.* v. *Superior Court* (1985) 37 Cal.3d 802, 808 [210 Cal.Rptr. 204, 693 P.2d 789].) ⬛ However, as the *Arcega* court pointed out (32 Cal.3d at p. 523), federal constitutional law compels the same result.

In *Estelle* v. *Smith, supra,* 451 U.S. 454, where a Texas trial court appointed a psychiatrist to determine the defendant's competency to stand trial, the United States Supreme Court found when the doctor "went beyond simply reporting to the court on the issue of competence and testified for the prosecution at the penalty phase [of a bifurcated capital murder trial] on the crucial issue of respondent's future dangerousness, his role changed and became essentially like that of an agent of the State recounting unwarned statements made in a postarrest custodial setting." (*Id.,* at p. 467 [68 L.Ed.2d at p. 372].) The Court held the admission of the testimony violated the defendant's Fifth Amendment privilege against self-incrimination. (*Id.,* at p. 468 [*ibid.*].)

Although the court distinguished the examination at issue from one occasioned by a plea of not guilty by reason of insanity, it did so entirely on the assumption that when a defendant asserts an insanity defense he raises an issue and introduces supporting psychiatric testimony which the state has a right to rebut. (*Id,* at p. 465 [68 L.Ed.2d at p. 370].) On the same theory, in *Buchanan* v. *Kentucky* (1987) 483 U.S. 402 [97 L.Ed.2d 336, 107 S.Ct. 2906], where "petitioner's entire defense strategy was to establish the 'mental status' defense of extreme emotional disturbance" (*id.,* at p. 423 [97 L.Ed.2d at p. 356, 107 S.Ct. at p. 2918]) and his sole witness was a social worker who read selectively from evaluations of his mental condition (*id.,* at p. 409 [97 L.Ed.2d at p. 346, 107 S.Ct. at p. 2910]), the court held the introduction on cross-examination of a psychological evaluation ordered under a statute governing involuntary hospitalization (*id.,* at pp. 410-411 [97 L.Ed.2d at p. 347, 107 S.Ct. at p. 2911]) "for this limited rebuttal purpose does not constitute a Fifth Amendment violation." (*Id.,* at p. 424 [97 L.Ed.2d at p. 356, 107 S.Ct. at p. 2918].)

Unlike the petitioner in *Buchanan* but like the respondent in *Estelle,* Williams "introduced no psychiatric evidence" (451 U.S. at p. 466 [68 L.Ed.2d at p. 3717]) for the state to rebut at the guilt phase of his trial. "Instead, the State offered information obtained from the court-ordered [insanity] examination as affirmative evidence to persuade the jury to return a [verdict of guilty]." (*Ibid.*) Moreover, the doctor in *Estelle* v. *Smith, supra,* 451 U.S. at page 464 [68 L.Ed.2d at p. 369], introduced defendant's statements only as a basis for his opinion, and the doctor's report in *Buchanan* v. *Kentucky, supra,* at page 424 [97 L.Ed.2d at p. 356, 107 S.Ct. at p. 2918] set forth general observations about the defendant's mental state without de-

scribing any statements dealing with the charged crimes, while Dr. Glathe introduced a purported blanket confession without even attempting to relate it to the formation of an expert opinion.

The trial court appointed Dr. Glathe to examine Williams pursuant to his plea of not guilty by reason of insanity under a statute establishing separate guilt and sanity trials. At their second interview, on the evening of the seventh day of an eight-day guilt trial, Glathe reiterated the purpose of his examination. He did not warn Williams that anything he said might be used against him in the waning moments of the guilt phase, during which Williams had not put his mental state in issue. Not only was this a violation of state law, but it violated the federal Constitution as well.

■ Nor was the error harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065].) Much of the evidence against Williams was circumstantial, as it often is in arson cases. (*People* v. *Beagle* (1972) 6 Cal.3d 441, 449 [99 Cal.Rptr. 313, 492 P.2d 1].) In a dramatic and unusual move, when the guilt phase of the trial was ostensibly over, the court reopened the proceedings, a psychiatrist appeared to say "He confessed!" and the jury was instructed and sent out to deliberate. Under these circumstances the error requires reversal.

## II*

. . . . . . . . . . . . . . . . . . . .

The judgment is reversed.

Low, P. J., and Haning, J., concurred.

---

*See footnote, *ante*, page 1320.