[No. B170615. Second Dist., Div. Five. Mar. 25, 2004.]

WALTER CENTENO, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE OF THE STATE OF CALIFORNIA, Real Party in Interest.

34

**COUNSEL**

Michael P. Judge, Public Defender, Albert J. Menaster, Daniel Kuperberg, Jenny Brown and Terri Towery, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Steve Cooley, District Attorney, Brent Riggs and Jessica Goulden, Deputy District Attorneys, for Real Party in Interest.

**OPINION**

**GRIGNON, Acting P. J.**—Petitioner and defendant Walter Centeno has been charged with special circumstance murder and the prosecution is seeking the death penalty. Defendant claims he is mentally retarded. In *Atkins v. Virginia* (2002) 536 U.S. 304, 319–321 [153 L.Ed.2d 335, 122 S.Ct. 2242], the United States Supreme Court held that execution of a mentally retarded person constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution. The United States Supreme Court left to the states the proper procedures for effectuating its holding. Prior to the adoption of any

procedures in California to implement the holding of *Atkins*, defendant applied for a pretrial mental retardation hearing before respondent trial court. The trial court ordered a hearing on the mental retardation issue, but declined to resolve questions concerning the timing or the nature of that hearing. The trial court also ordered defendant to submit to a mental retardation examination by a prosecution mental health expert, but declined to provide unqualified judicial immunity to defendant for statements made by him in the course of the examination. The trial court obtained a list of the tests the prosecution expert wished to perform during the examination, but declined to rule on the appropriateness of some of the tests challenged by the defense. On October 16, 2003, defendant filed a petition for a writ of mandate challenging the trial court's order. Effective January 1, 2004, the Legislature adopted Penal Code section 1376, which defines "mentally retarded" and sets forth procedures for determining whether a defendant is mentally retarded for purposes of eligibility for the death penalty. Many of the issues raised by the petition have been resolved by the new legislation. We conclude: defendant is entitled to a pretrial hearing before the court on the issue of mental retardation; a prosecution expert may conduct a pretrial examination of defendant for mental retardation; defendant is not entitled to unqualified judicial immunity, but possesses a statutory immunity at the guilt phase of the trial; and the scope of the testing by the prosecution expert is limited to tests reasonably related to a determination of defendant's mental retardation. We grant the petition for writ of mandate.

## FACTS AND PROCEDURAL BACKGROUND

Before trial, defendant raised a claim that he is mentally retarded so as to foreclose execution of a death sentence under the holding of *Atkins v. Virginia, supra,* 536 U.S. 304. Specifically, a defense expert opined that defendant is mentally retarded, and the expert's opinion was communicated to the prosecution and the trial court as raising an *Atkins* issue. The prosecution disputed whether defendant is mentally retarded. The prosecution asked the trial court to allow its expert to examine defendant's mental condition. The prosecution agreed that if its expert concludes defendant is mentally retarded, it will abandon efforts to seek the death penalty. However, if the issue remains disputed and a hearing becomes necessary to determine whether petitioner is mentally retarded for *Atkins* purposes, the prosecution suggested the matter should be heard by the jury between the guilt and penalty phases of the trial.

Defendant initially objected to examination by the prosecution expert, arguing it would violate pretrial discovery statutes governing criminal proceedings. He later agreed to withdraw his objection if any hearing to determine whether he is mentally retarded for *Atkins* purposes was held by

the court before trial. Defendant, through his counsel, expressly waived his right to a jury trial on this issue. The trial court did not decide the question of the timing of an *Atkins* hearing, but ordered that defendant first submit to examination by the prosecution expert, as the entire issue might be moot should that expert agree defendant is mentally retarded.

Despite the trial court's failure to set a time for any *Atkins* hearing, defendant's counsel acquiesced in the order that testing take place, asking only that the scope of permissible testing be considered. The trial court indicated the prosecution expert would be prohibited from probing the events of the charged crimes. At a later hearing, the trial court required the prosecution to produce a list for defendant's review of "proposed possible" tests its expert wished to conduct.

Once the prosecution's list of possible tests was produced, defendant filed objections to six of the 14 proposed tests. Defendant provided the declarations of 11 defense experts, including the expert who had found defendant to be mentally retarded, opining that the six challenged tests were either widely discredited, inappropriate, or constituted personality testing designed to uncover psychopathy and other mental personality disorders unrelated to the determination of mental retardation. For example, according to defense experts, one test proposed by the prosecution was designed to assess psychopathic antisocial personality disorders rather than any impairment in mental functioning or adaptive behavior that they considered to be the appropriate measure of mental retardation. In response, the prosecution pointed out that its expert is a native Spanish speaker, as is defendant, and is skilled at conducting mental retardation evaluations, having conducted them for the regional center in Los Angeles for 15 years, headed an emergency outreach center, and maintained a forensic practice. However, the prosecution did not present any declaration or other evidence from its expert defending the propriety of the challenged tests. Rather, it simply offered to have its expert testify in camera at the trial court's request, fearing additional statements in front of defendant concerning the nature of the planned testing would impair that testing. But the trial court declined to request such testimony.

The trial court ultimately ruled that the prosecution examination could go forward. It indicated the prosecution is entitled to conduct the testing its expert believes is appropriate now that defendant has placed his mental retardation in issue. The trial court determined that the question of whether the proposed tests are appropriate for measuring mental retardation goes to the weight to be given those tests by the trier of fact determining the issue of defendant's mental retardation. The trial court noted the list of proposed tests is not set in stone, but merely reflects what might be used in the expert's judgment when assessing defendant's mental state.

The trial court further determined that admissibility of any particular information obtained in the examination could be decided at trial, should the prosecution proffer evidence to which defendant objected. Accordingly, the trial court refused to issue unqualified immunity for defendant's statements during the examination. At the same time, the trial court ordered the prosecution not to inquire into the facts of the case in testing defendant, but to test him on only general matters. It also had the prosecution inform defendant of the identity of the expert, the anticipated duration of the examination, and the time and location of the examination, and required that defendant's attorneys be allowed to wait nearby while the examination was conducted in case defendant wished to confer with them, inviting the parties to return for additional guidance if there were any difficulties in carrying out the testing.

This petition followed. It was summarily denied by this court on October 23, 2003. However, the California Supreme Court later granted a petition for review of that denial and transferred the matter back to this court with directions to issue an order to show cause why the relief prayed for in the petition should not be granted. We issued an order to show cause.

## DISCUSSION

*Penal Code Section 1376*[1]

The term "mentally retarded" means "the condition of significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior and manifested before the age of 18." (Pen. Code, § 1376, subd. (a).) In death penalty cases, a defendant may seek a mental retardation hearing by an application supported by the declaration of a qualified expert that the defendant is mentally retarded, made a reasonable time prior to trial. Upon the receipt of the application, the trial court is to order a mental retardation hearing. The defendant may request a pretrial mental retardation hearing before the court. Such a request is deemed to be a waiver of the right to a jury trial on the issue. The pretrial hearing is then conducted prior to the selection of the jury. If the defendant does not request a pretrial court hearing, the issue is set for a hearing before a jury following the guilt phase of the trial. The jury that hears the mental retardation issue is the same jury that hears the guilt phase. (Pen. Code, § 1376, subd. (b)(1).)[2]

---

[1] Although not adopted until after the proceedings at issue in this writ proceeding, the newly enacted procedures for the conduct of mental retardation hearings apply to cases pending in the trial court. (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 288 [279 Cal.Rptr. 592, 807 P.2d 434].)

[2] Penal Code section 1376, subdivision (b)(1) provides: "In any case in which the prosecution seeks the death penalty, the defendant may, at a reasonable time prior to the

The trial court may appoint experts and permit examination of the defendant by experts for the purpose of producing evidence at the hearing to determine whether the defendant is mentally retarded. (Pen. Code, § 1376, subd. (b)(2).) Statements made by the defendant during a court-ordered examination are inadmissible in the guilt phase of the trial. (*Ibid.*)[3]

*Pretrial Examination by Prosecution Expert*

Defendant challenges the trial court's authority to order defendant to submit to a pretrial examination by a prosecution expert. Defendant argues he has not put his mental retardation in issue, no examination by a prosecution expert should take place until a hearing on mental retardation has commenced, an order for a pretrial examination violates the criminal discovery statutes, and Penal Code section 1376 does not provide for a pretrial examination by the prosecution. We reject each of defendant's arguments.

The record establishes that defendant has tendered the issue of his mental retardation. He applied to the trial court for a hearing on the issue of mental retardation. This application was supported by the opinion of a defense expert that defendant is mentally retarded. Defendant requested a pretrial hearing before the trial court. He waived his right to a jury trial. He agreed to a pretrial examination by the prosecution on condition he was provided a pretrial court hearing on mental retardation. Although the trial court deferred

---

commencement of trial, apply for an order directing that a mental retardation hearing be conducted. Upon the submission of a declaration by a qualified expert stating his or her opinion that the defendant is mentally retarded, the court shall order a hearing to determine whether the defendant is mentally retarded. At the request of the defendant, the court shall conduct the hearing without a jury prior to the commencement of the trial. The defendant's request for a court hearing prior to trial shall constitute a waiver of a jury hearing on the issue of mental retardation. If the defendant does not request a court hearing, the court shall order a jury hearing to determine if the defendant is mentally retarded. The jury hearing on mental retardation shall occur at the conclusion of the phase of the trial in which the jury has found the defendant guilty with a finding that one or more of the special circumstances enumerated in Section 190.2 are true. Except as provided in paragraph (3), the same jury shall make a finding that the defendant is mentally retarded, or that the defendant is not mentally retarded."

[3] Penal Code section 1376, subdivision (b)(2) provides: "For the purposes of the procedures set forth in this section, the court or jury shall decide only the question of the defendant's mental retardation. The defendant shall present evidence in support of the claim that he or she is mentally retarded. The prosecution shall present its case regarding the issue of whether the defendant is mentally retarded. Each party may offer rebuttal evidence. The court, for good cause in furtherance of justice, may permit either party to reopen its case to present evidence in support of or opposition to the claim of retardation. Nothing in this section shall prohibit the court from making orders reasonably necessary to ensure the production of evidence sufficient to determine whether or not the defendant is mentally retarded, including, but not limited to, the appointment of, and examination of the defendant by, qualified experts. No statement made by the defendant during an examination ordered by the court shall be admissible in the trial on the defendant's guilt."

ruling on the nature and timing of the hearing to which defendant was entitled, those issues have been settled by Penal Code section 1376. Defendant is entitled to the pretrial court hearing he requested.[4]

■ A defendant who places his mental condition in issue may be subjected to a mental examination by the prosecution to test his claim. (*People v. Carpenter* (1997) 15 Cal.4th 312, 412 [63 Cal.Rptr.2d 1, 935 P.2d 708].) ■ A defendant who tenders his mental condition as an issue waives his or her Fifth Amendment right against self-incrimination and Sixth Amendment right to counsel to the extent necessary to permit a proper examination of that condition. (*Ibid.*) Any other result would "give an unfair tactical advantage to defendants." (*People v. McPeters* (1992) 2 Cal.4th 1148, 1190 [9 Cal.Rptr.2d 834, 832 P.2d 146].) Penal Code section 1376 expressly authorizes the trial court to appoint experts and permit examination of the defendant by experts for the purpose of producing evidence at the hearing to determine whether the defendant is mentally retarded. (Pen. Code, § 1376, subd. (b)(2).) Although this statute does not expressly provide for pretrial examination of a defendant by the prosecution, it impliedly contemplates constitutional procedures necessary to ensure a fair trial. (*Baqleh v. Superior Court* (2002) 100 Cal.App.4th 478, 489 [122 Cal.Rptr.2d 673] [competency].) ■ Even in the absence of statutory authority, the trial court has inherent authority to fashion a method to ensure a defendant's claim of mental retardation is appropriately tested. (*People v. Danis* (1973) 31 Cal.App.3d 782, 786 [107 Cal.Rptr. 675] [diminished capacity].) Upon motion of the prosecution, the trial court may direct a defendant to submit to a pretrial examination for mental retardation by an expert retained by the prosecution. (*Baqleh v. Superior Court, supra,* 100 Cal.App.4th at pp. 488–493.)

■ Defendant acknowledges that the prosecution is entitled to examine him when he tenders the issue of his mental retardation. However, he asserts that he has not yet tendered the issue of his mental retardation. He argues that trial strategy is fluid and the prosecution's expert should not be permitted to examine him until he has presented evidence at the mental retardation hearing. This argument is unpersuasive. A midhearing postponement of proceedings in order to permit testing and examination of defendant by a prosecution expert would be extremely inefficient, induce unwarranted delay in the proceedings, be unfair to the prosecution, and serve no legitimate interest of defendant. Penal Code section 1376 requires a defendant to raise the issue of mental retardation a reasonable time prior to trial. (Pen. Code, § 1376, subd. (b)(1).) Defendant raised the issue pretrial and requested a pretrial court hearing on the issue. Defendant agreed to a pretrial examination by a prosecution expert. The pretrial resolution of this issue may prevent

---

[4] Nothing in this opinion prohibits defendant from withdrawing his application for a mental retardation hearing should defendant deem it to be in his best interests to do so.

unnecessary prosecution of this matter as a death penalty case. We conclude the trial court acted within its authority and did not abuse its discretion in ordering defendant to submit to a pretrial examination by a prosecution expert in this case.

■ Finally, defendant argues that a pretrial examination of defendant by a prosecution expert is a form of criminal discovery unauthorized by the reciprocal criminal discovery statutes. (Pen. Code, § 1054 et seq.) California's criminal discovery statutory scheme "controls the substance of criminal discovery in California except for discovery that is mandated by the United States Constitution and discovery that is expressly provided in other statutes." (*People v. Superior Court (Barrett)* (2000) 80 Cal.App.4th 1305, 1313 [96 Cal.Rptr.2d 264].) Examination by experts in connection with a mental retardation hearing is expressly provided for in Penal Code section 1376. Accordingly, the criminal discovery statutory scheme does not control the examination.[5] This conclusion is supported by the language of Penal Code section 1054.3, which requires defense counsel to "disclose" information in the possession of defense counsel, such as reports of experts and results of tests. Examination of a defendant by a prosecution expert is unrelated to disclosure of information by defense counsel and thus is not logically encompassed by the criminal discovery statutes. We conclude the criminal discovery statutes are inapplicable to the testing of a defendant by a prosecution expert for mental retardation where defendant has tendered the issue.

*Immunity*

Penal Code section 1376 provides a limited immunity at the guilt phase for statements made by a defendant during a court-ordered examination. Defendant asserts that a limited immunity is inadequate. If he is compelled to submit to examination by a prosecution expert, defendant contends he is entitled under the Fifth and Sixth Amendments to the United States Constitution to unqualified immunity for any statements he makes during the examination.

---

[5] We also note that the criminal discovery statutes are not applicable to the prosecution's obtaining nontestimonial evidence. (Pen. Code, § 1054.4.) Nontestimonial evidence includes blood samples, urine samples, saliva samples, fingerprints, handwriting exemplars, voice exemplars, writings, and physical lineups. (E.g., *Hobbs v. Municipal Court* (1991) 233 Cal.App.3d 670, 688–689, fn. 15 [284 Cal.Rptr. 655] [disapproved on other grounds in *People v. Tillis* (1998) 18 Cal.4th 284, 295 [75 Cal.Rptr.2d 447, 956 P.2d 409]; see also *People v. Sanchez* (1994) 24 Cal.App.4th 1012, 1024 [30 Cal.Rptr.2d 111].) For purposes of the criminal discovery statutes, nontestimonial evidence may also include psychological testing of mental retardation where otherwise permissible, even though it is considered testimonial for purposes of the privilege against self-incrimination. (See *People v. Danis, supra,* 31 Cal.App.3d at p. 785.) Here, the expert was precluded from questioning defendant concerning the facts of the case. (Cf. *Estelle v. Smith* (1981) 451 U.S. 454 [68 L.Ed.2d 359, 101 S.Ct. 1866].)

Alternatively, he argues we should adopt a rule of unqualified judicial immunity for his statements. Thus, he argues his statements may not be used and the prosecution expert may not testify in the guilt or penalty phase of the trial.

A criminal defendant's Fifth and Sixth Amendment rights may be implicated by a compelled custodial psychiatric examination. "A criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding." (*Estelle v. Smith, supra,* 451 U.S. 454, 468 [68 L.Ed.2d 359, 101 S.Ct. 1866] [competency].) However, if the information obtained by the psychiatrist at a compelled competency examination is admissible solely for the purpose of determining competency, no Fifth or Sixth Amendment issue arises. (*Ibid.*) In addition, "if a defendant requests [a psychiatric] evaluation or presents psychiatric evidence, then, at the very least, the prosecution may rebut this presentation with evidence from the reports of the examination that the defendant requested." (*Buchanan v. Kentucky* (1987) 483 U.S. 402, 422–423 [97 L.Ed.2d 336, 107 S.Ct. 2906] [involuntary hospitalization].)

With respect to competency proceedings, the California Supreme Court has adopted a judicially declared rule of unqualified immunity that is reasonably implied from the Penal Code provisions governing competency proceedings. (*People v. Weaver* (2001) 26 Cal.4th 876, 960 [111 Cal.Rptr.2d 2, 29 P.3d 103].) A psychiatrist appointed to examine a defendant for competency may not subsequently testify on the issues of the defendant's guilt, sanity or penalty. (*Id.* at pp. 959–963.) The purposes of the rule of immunity are to protect a defendant's privilege against self-incrimination, promote the public policy of not trying persons who are mentally incompetent, and prevent violations of the federal Constitution. (*Id.* at p. 960.) The California rule of judicial immunity is broader than the federal rule for compliance with the Fifth and Sixth Amendments. (*People v. Arcega* (1982) 32 Cal.3d 504, 523, fn. 6 [186 Cal.Rptr. 94, 651 P.2d 338].)

The California Supreme Court has adopted a different rule with respect to sanity proceedings. (*People v. Williams* (1988) 44 Cal.3d 883, 961 [245 Cal.Rptr. 336, 751 P.2d 395].) "The appointment of a psychiatrist pursuant to [Penal Code] sections 1026 and 1027 is made only in response to the defendant's entry of a plea of not guilty by reason of insanity. The examination, initiated at the behest of the defendant, is not 'compelled' . . . . Statements made to the examining psychiatrist are admissible at the guilt and sanity phases of the trial if the defendant puts his mental state in issue." (*Ibid.*; cf. *People v. Williams* (1988) 197 Cal.App.3d 1320, 1325–1326 [243 Cal.Rptr. 480] [inadmissible at guilt phase if defendant does not place his

mental state in issue at the guilt phase].) The statements are also admissible at the penalty phase if the defendant places his mental state in issue. (*People v. Williams, supra,* 44 Cal.3d at p. 961.) "[W]hen a defendant initiates a psychiatric examination by court-appointed experts, admission of the defendant's statements in a subsequent proceeding in which he has placed his mental state in issue violates neither his Fifth Amendment right against self-incrimination nor his Sixth Amendment right to counsel. Even if the defendant or his counsel is not aware at the time of the examination of all of the possible uses to which his statements might be put, he is on notice that they are admissible in rebuttal in such proceedings." (*Id.* at pp. 961–962.)

Although competency and sanity proceedings appear on a superficial level to be similar, their inherent differences support their different treatment in the immunity context. A defendant does not voluntarily place his competency in issue. The trial court, acting on its own or at the suggestion of defense counsel in the absence of consultation with the defendant, initiates the competency proceedings by declaring a doubt as to a defendant's competency. A defendant may not refuse to submit to the psychiatric examinations which follow this declaration of doubt and a defendant may not waive his right to a trial on the issue of his competency. In this respect, the examinations are truly compelled. Moreover, competency proceedings are civil in nature and collateral to the determination of defendant's guilt and punishment. A plea of insanity, on the other hand, is a tactical voluntary decision made by a competent defendant with the advice of counsel. It may be made only by the defendant and may be withdrawn by him. (But see *Baqleh v. Superior Court, supra,* 100 Cal.App.4th at p. 500, fn. 6.) Thus, the psychiatric examinations which flow from a plea of not guilty by reason of insanity are done at the behest of the defendant and are not compelled. (*People v. Poggi* (1988) 45 Cal.3d 306, 329–330 [246 Cal.Rptr. 886, 753 P.2d 1082].) In addition, sanity proceedings are an integral part of the determination of defendant's guilt and punishment. (*People v. Superior Court (Mitchell)* (1993) 5 Cal.4th 1229, 1233 [23 Cal.Rptr.2d 403, 859 P.2d 102] [guilt and penalty proceedings part of single, unitary criminal proceeding].)

We conclude the Fifth and Sixth Amendments are not violated by the mental retardation proceedings set forth in Penal Code section 1376 and the examination of a defendant by court-appointed or prosecution experts. In order to avoid death penalty proceedings, the defendant has requested a mental retardation hearing, supported by the declaration of an expert. The court-ordered examinations are conducted in order to allow the court to fairly determine the issue raised by defendant. Certainly the evidence is admissible at the mental retardation hearing. It may also be admissible in subsequent proceedings if the defendant places his mental condition in issue. At the very least, a defendant would have no Fifth Amendment privilege against the introduction by the prosecution of evidence from his examination in order to

rebut presentation of mental state evidence by defendant. However, as a further protection, the Legislature has expressly adopted a rule of statutory immunity at the guilt phase. In addition, the trial court in this case ordered additional protection for defendant. The trial court limited the examination by the prosecution's expert in two significant ways: the prosecution's expert may not question defendant about the facts of the case and defendant is permitted to have his attorney nearby during the examination and is allowed to consult with his attorney during the examination if he chooses.

Nevertheless, defendant contends he is entitled to unqualified judicial immunity. Defendant analogizes mental retardation proceedings to competency proceedings. Based on this analogy, he argues he is similarly entitled to unqualified judicial immunity. We are not persuaded by this analogy and conclude the more appropriate analogy is to sanity proceedings. The mental retardation proceedings are not collateral to the criminal proceedings to determine a defendant's guilt and punishment. The sole purpose of a mental retardation hearing is to determine the appropriate punishment for a defendant guilty of a capital offense. In addition, the application for a mental retardation hearing is a tactical voluntary decision made by a competent defendant with the advice of counsel. The issue of a defendant's mental retardation may not be made by the trial court and a defendant may withdraw the claim if he or she concludes it is in his or her best interest to do so. Judicial immunity is not warranted where a competent defendant with the advice of counsel voluntarily places his or her mental state in issue.

The California Supreme Court adopted a rule of judicial immunity in competency proceedings in part to effectuate the implied intent of the Legislature. The statutes governing competency proceedings include no express provisions for immunity. Penal Code section 1376, on the other hand, includes a specific grant of statutory immunity at the guilt phase of a death penalty trial. It would not effectuate an implied legislative intent to create an additional judicial immunity for other phases of the trial when the Legislature has specifically limited immunity to the guilt phase.

In summary, the Legislature has provided a limited immunity at the guilt phase for statements made by a defendant at a court-ordered examination for mental retardation. No further immunity is required by the Fifth and Sixth Amendments to the United States Constitution. Controlling precedent of the California Supreme Court in the context of competency proceedings does not support the adoption of a judicial rule of unqualified immunity in mental retardation proceedings.

*Scope of Permissible Testing*

 Finally, defendant contends that the trial court erred in failing to restrict the tests the prosecution expert would be permitted to conduct. In light of the evidence that was before the trial court, we agree. It is true that a defendant who tenders his mental condition as an issue may be subject to examination by prosecution experts. (*People v. McPeters, supra,* 2 Cal.4th at p. 1190; *Baqleh v. Superior Court, supra,* 100 Cal.App.4th at pp. 488–493; *People v. Danis, supra,* 31 Cal.App.3d at pp. 786–787.) However, those examinations are permissible only to the extent they are reasonably related to the determination of the existence of the mental condition raised. (*People v. Carpenter, supra,* 15 Cal.4th at p. 412; see also Pen. Code, § 1376, subd. (b)(2).) Thus, when mental retardation for *Atkins* purposes is the issue, the tests to be conducted by prosecution experts must be reasonably related to a determination of whether the defendant has a "significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior and manifested before the age of 18." (Pen. Code, § 1376, subd. (a); *Atkins v. Virginia, supra,* 536 U.S. 304.) The mental retardation examination must be limited in its scope to the question of mental retardation. (*Baqleh v. Superior Court, supra,* 100 Cal.App.4th at p. 492.) Therefore, if requested, the prosecution must, as it was required to do in this case, submit a list of proposed tests to be considered by the defendant so that any objections may be raised before testing begins. Then, upon a defense objection to specific proposed prosecution tests, the trial court must make a threshold determination that the tests bear some reasonable relation to measuring mental retardation, including factors that might confound or explain the testing, such as malingering. Otherwise, there is a danger that defendants will be improperly subjected to mental examinations beyond the scope of the precise issue they have tendered and their resulting waiver of constitutional rights.

 In this case, the parties agree that eight of the tests the prosecution's expert plans to administer are relevant to testing defendant's alleged mental retardation. However, defendant has presented evidence in the form of expert declarations questioning whether six of the proposed tests are reasonably related to measuring mental retardation. Despite a prosecution offer to present testimony of its expert as to the propriety of the proposed tests, the trial court did not take any evidence to inform its conclusion that the defense criticisms went only to the weight to be given the results of the proposed testing. In this respect, the trial court erred. Instead, the trial court should have considered expert declarations, testimony, or other admissible evidence, as to whether the six challenged tests were reasonably related to determining mental retardation. The trial court must prohibit any tests it concludes are not reasonably related to determining mental retardation.

██ We do not suggest that the defense may dictate the tests that the prosecution may administer. Reasonable experts may differ. If the appropriateness of a proposed test is supported by the evidence, in that the proposed prosecution test is reasonably related to measuring the legitimacy of a defendant's mental retardation claim, that test may be permitted. Then, the weight to be given the results of any relevant tests is a question for the trier of fact determining the mental retardation issue to consider. (E.g., *People v. Stoll* (1989) 49 Cal.3d 1136, 1154–1155, 1157 [265 Cal.Rptr. 111, 783 P.2d 698]; *People v. McDonald* (1984) 37 Cal.3d 351, 372–373 [208 Cal.Rptr. 236, 690 P.2d 709], disapproved on another ground in *People v. Mendoza* (2000) 23 Cal.4th 896, 914 [98 Cal.Rptr.2d 431, 4 P.3d 265]; see also CALJIC No. 2.80.) ██ We hold only that the trial court must initially determine whether the proposed tests are reasonably related to the mental retardation issue tendered by the defendant. And such an inquiry need only be made where the defense raises an objection, based on evidence, to proposed prosecution tests. In that manner, the prosecution will be able to test a defendant's claim of mental retardation for *Atkins* purposes, yet the defendant will be protected from examinations that exceed the scope of any issues tendered in defense of capital charges.

## DISPOSITION

The petition for writ of mandate is granted. The trial court is directed to consider whether the six proposed tests to which defendant objects are reasonably related to the issue of measuring mental retardation for *Atkins* purposes, and if any test is deemed unrelated to the issue, amend its order to foreclose prosecution examination of defendant with that test. The trial court is also directed to conduct further mental retardation proceedings consistent with Penal Code section 1376 and this opinion.

Armstrong, J., and Mosk, J., concurred.

Petitioner's petition for review by the Supreme Court was denied June 9, 2004.