[No. E012074. Fourth Dist., Div. Two. Sept. 19, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES EDWARD CROW, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part C.

## COUNSEL

Keith C. Monroe for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Janelle B. Davis and Maxine P. Cutler, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**McKINSTER, J.**—The defendant was tried on eight identical counts of committing lewd and lascivious acts on the body of his thirteen-year-old stepdaughter during the period of January 1, 1990, through September 11, 1990 (Pen. Code, § 288, subd. (a)),[1] and on one count of possessing a short-barreled shotgun (§ 12020, subd. (a)). The jury found him guilty on the weapon possession charge and on three of the eight child molestation charges. However, the jury was evenly split on the remaining five molestation charges, and could not reach verdicts on those counts. Accordingly, a mistrial was declared as to the remaining counts, which were subsequently dismissed on the People's motion. (§ 1385.)

### CONTENTIONS

The defendant contends that the judgment ought to be reversed because (1) he was deprived of his constitutional right to have his guilt decided by a unanimous jury, (2) the trial court erred in permitting the People to impeach him with evidence which had been revealed to them in the course of plea negotiations, and (3) the trial court prejudicially erred by failing to bifurcate the weapons charge from the unrelated molestation counts. Finding no merit in any of these contentions, we affirm.

### DISCUSSION

A. *The Defendant Was Not Deprived of His Right to a Unanimous Jury.*

█ In order to find a defendant guilty of a particular crime, the jurors must unanimously agree that the defendant committed the same specific act constituting the crime within the period alleged. (CALJIC No. 4.71.5.) That unanimity is required by article I, section 16, of our Constitution. (*People* v. *Jones* (1991) 51 Cal.3d 294, 321 [270 Cal.Rptr. 611, 792 P.2d 643].)

---

[1]Unless specified otherwise, all section references are to the Penal Code.

■ Noting that the information charged him with committing eight acts of lewd and lascivious conduct within the same period of time, and that the jury convicted him on only three of those eight counts, the defendant argues that the judgment must be reversed because there is no way to determine whether the jury unanimously agreed on the same three specific acts to support those convictions.

He is mistaken. In the absence of evidence to the contrary, a jury is presumed to have complied with the instructions given to it. (*People v. Isby* (1947) 30 Cal.2d 879, 896-897 [186 P.2d 405]; *People v. Aranda* (1965) 63 Cal.2d 518, 524-525 [47 Cal.Rptr. 353, 407 P.2d 265].) Here, the jury was instructed concerning the necessity of unanimity in order to convict.[2] Even in the case of a resident child molester in which the only evidence presented by the prosecution is of a series of separate but indistinguishable acts, that instruction is sufficient to protect a defendant's right to a unanimous jury so long as there is substantial evidence to support the convictions. (*People v. Jones, supra,* 51 Cal.3d p. 321.)

■ Evidence is substantial in such cases if it meets three minimum prerequisites: (1) the act or acts committed are described with sufficient specificity to assure both that unlawful conduct actually occurred and that the conduct is proscribed by the statutes under which the defendant was charged; (2) the number of acts committed is described with sufficient certainty to support each of the counts of which the defendant was convicted[3]; and (3) the general time period during which the acts occurred is described in order to assure that the acts were committed within the applicable limitation period. (51 Cal. 3d at p. 316.)

---

[2]In accordance with CALJIC No. 4.71.5 (1990 rev.), the jury was instructed: "Defendant is accused in Counts one, two, three, four, five, six, seven & eight of the information of having committed the crime of lewd act with child under 14 yrs, a violation of Section 288 sub a of the Penal Code, on or about a period of time between Jan 1, 1990 and Sept 11, 1990.

"In order to find the defendant guilty, it is necessary for the prosecution to prove beyond a reasonable doubt the commission of a specific act or acts constituting that crime within the period alleged.

"And, in order to find the defendant guilty, you must unanimously agree upon the commission of the same specific act or acts constituting the crime within the period alleged.

"It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict."

[3]*Jones* actually says that there must be a sufficient number of acts proven to support the number of acts *alleged in the information.* (51 Cal.3d at p. 316.) However, when considering the sufficiency of evidence to support a judgment, we are concerned only with the counts on which the defendant was found guilty, not those on which he or she was found not guilty. It would appear, therefore, that the Supreme Court was contemplating situations in which there is no distinction, i.e., those in which the defendant is found guilty of all counts alleged. In order to also cover those cases in which the defendant is not convicted on every count alleged, we believe that the test is more correctly phrased as whether there is evidence of acts to support each of the counts of which the defendant was found guilty.

Here, the victim testified that between July of 1990 and the victim's 14th birthday on September 12, 1990, the defendant committed at least 5 acts of intercourse, "probably" 10 acts of touching her breasts, and at least 3 acts of touching her vagina with his fingers.[4] That number easily exceeds the number of lewd acts for which he was convicted (three) and for which he was charged (eight). There is also no doubt that those acts are proscribed by section 288, subdivision (a), and that they occurred within the three-year limitation period of section 801. ▮▮ Therefore, the evidence was substantial, and the instruction of the jury with CALJIC No. 4.71.5 was sufficient to protect his right to a unanimous jury.

The defendant argues that these rules should not apply here, because the two examples offered by the Supreme Court in *People* v. *Jones* (51 Cal.3d at p. 321) both involve cases in which the jury returned guilty verdicts on all counts charged, while here the jury found the defendant guilty of only three of the eight counts charged. However, we do not read *Jones* to limit the application of the rule it announces to the narrow facts of the examples stated. To the contrary, it appears that the only limitations are that the unanimity instruction is given and that the evidence satisfies the "three minimum prerequisites" which ensure that the evidence is substantial. (*Ibid.*)

▮ Similarly, we reject the defendant's contention that, when there is evidence of several different types of acts, all of which are proscribed by section 288, there must be some means of determining which of those acts were relied upon by the jury as the basis for its verdicts. He relies on language in *Jones* which states that the evidence of the types of acts committed must be sufficiently specific "to differentiate between the various types of proscribed conduct (e.g., lewd conduct, intercourse, oral copulation or sodomy)." (51 Cal.3d at p. 316.) As indicated above, we interpret that to mean that the evidence must show that the conduct which occurred is proscribed by the statute or statutes which the defendant was charged with having violated. Digital penetration, intercourse, and touching of the victim's breasts all fall within the broad definition of lewd conduct, the offense charged here. There is no requirement that a reviewing court be able to determine from the record whether, in returning its three guilty verdicts, the jury relied upon evidence of one type of lewd conduct as opposed to another.[5]

---

[4] She had testified earlier to greater numbers of the various acts, but the time period about which she was questioned extended through November of 1990, beyond the time period alleged in the information.

[5] The defendant also contends that the judgment must be reversed because "[a] defendant who has been in jeopardy for a charged offense is entitled to a judgment that is sufficiently particular so that it may be tendered as a defense to a future prosecution for the same

### B. *The Trial Court Did Not Err by Permitting the Defendant to Be Impeached With Evidence of His Prior Inconsistent Statements.*

In December of 1990, the defendant consulted with a psychologist, Dr. Kania, who conducted a confidential psychological evaluation of the defendant. The results of that evaluation were explained in a letter sent by Dr. Kania to the defendant's counsel. While the report does not appear in the record, Kania apparently concluded that the defendant did not match the psychological profile of a child molester.

In August of 1991, defense counsel was negotiating with the prosecutor in an attempt to obtain a favorable offer of disposition for the defendant. Defense counsel told the prosecutor of the existence of Kania's report, and suggested that it may affect the prosecutor's decision as to what an appropriate disposition would be. The prosecutor told defense counsel that if he was given the report, he would consider whether it justified a disposition different than that previously offered. However, the prosecutor warned him that if the defense chose to disclose the report and the report were unfavorable to the defendant's position, it would almost certainly be used against him at trial. Defense counsel provided the report to the prosecutor, but it did not result in a more favorable offer.

At trial in September of 1992, the victim testified, inter alia: that at the defendant's insistence, she, her mother, and the defendant regularly walked around inside their house in the nude; that the defendant had taken pictures of her while she was naked in a motel room in Lone Pine; and that the defendant had engaged in intercourse with her numerous times.

In response, the defendant testified on direct examination that he did not believe that his wife or the victim should walk around naked, and that he had never told them to do so; that he did not take any pictures of the victim in Lone Pine and was not present when they were taken, unless he was in the shower at the time; and that he had consulted a doctor for problems with impotency as early as 1981, two years before he married the victim's mother.

On cross-examination, the defendant reaffirmed and expanded upon his earlier testimony on these subjects. The prosecutor then sought to impeach

---

offense." This judgment clearly does not meet that standard. However, the only authority cited by the defendant (*People* v. *McElroy* (1989) 208 Cal.App.3d 1415, 1424 [256 Cal.Rptr. 853]) does not support the proposed rule. First, *McElroy* is distinguishable because it deals solely with judgments of acquittal. Second, *McElroy* reversed the judgment by which the defendant was convicted of charges for which he had previously been acquitted. Here, the defendant has yet to be placed in jeopardy a second time, and thus there is nothing to reverse.

the defendant by questioning him regarding contrary statements made to Kania. The defense objected, on the ground that Kania's report was inadmissible, having been disclosed in the course of plea negotiations. The trial court overruled the objection.

The prosecutor then asked the defendant whether he remembered telling Kania that nudity in his household was common, that he was in the motel room when his wife took the pictures of the victim, and that he did not start suffering from impotency until about a year after his marriage. The defendant responded that he was very upset during the interview, and thus did not remember the questions asked by Kania or how he answered those questions, but that it was possible that he made those statements to Kania.

■■ The defendant contends that the trial court erred by permitting the prosecution to cross-examine him regarding the statements made to Kania, because those statements were revealed to the prosecution in the course of plea negotiations. He is mistaken.

A patient has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between the patient and the patient's psychotherapist. (Evid. Code, § 1014.) However, that privilege is waived with respect to that communication if the patient has disclosed a significant part of the communication to anyone else. (Evid. Code, § 912, subd. (a).) Here, the defendant concedes that the pretrial disclosure of Kania's report to the prosecutor waived the psychotherapist-patient privilege to the statements made by the defendant to Kania.

However, the fact that a particular communication is not privileged under Evidence Code section 1014 does not necessarily mean that evidence of that communication is admissible. The Evidence Code contains a host of rules excluding evidence which is both relevant and nonprivileged, but the admission of which would tend to frustrate public policy. (Evid. Code, §§ 1100-1159.)

■■ For example, in the civil arena, offers to compromise a claim, as well as conduct and statements occurring in the course of negotiations for the settlement of a claim, are inadmissible to prove either the validity or invalidity of the claim. (Evid. Code, §§ 1152 & 1154.) The exclusion of that evidence "is based upon the public policy in favor of the settlement of disputes without litigation." (Recommendation Proposing an Evidence Code (Jan. 1965) 7 Cal. Law Revision Com. Rep. (1965) p. 218.)

■■ On the criminal side, the admission of evidence of a withdrawn guilty plea, or of an offer to plead guilty to either the crime charged or to any

other crime, is statutorily prohibited. (Evid. Code, § 1153; Pen. Code, § 1192.4.) The purpose of those statutes "is to promote the public interest by encouraging the settlement of criminal cases without the necessity of a trial." (*People* v. *Sirhan* (1972) 7 Cal.3d 710, 745 [102 Cal.Rptr. 385, 497 P.2d 1121], overruled on another ground in *Hawkins* v. *Superior Court* (1978) 22 Cal.3d 584, 593, fn. 7 [150 Cal.Rptr. 435, 586 P.2d 916].)

While section 1192.4 and Evidence Code section 1153 do not expressly extend that rule of inadmissibility to any statements made during plea negotiations other than pleas of guilty and offers to plead guilty, we did so in *People* v. *Tanner* (1975) 45 Cal.App.3d 345 [119 Cal.Rptr. 407]. There, a criminal defendant had written letters to the district attorney and to the deputy district attorney in charge of the defendant's case, in which he conceded that he was guilty of some involvement in the crime, but contended that his culpability was less than that of certain codefendants, and asked the prosecution to reconsider its position on a proposed plea bargain. Over the defendant's objection, the trial court allowed the People to introduce the letters as part of the prosecution's case-in-chief. (*Id.*, at pp. 348 & 353.)

On appeal, this court reversed the judgment. Because public policy favors settlements, and the chances of achieving settlements are the greatest when the defense is candid with the prosecution, we construed the rule of section 1192.4 and Evidence Code section 1153 to extend to "admissions made in the course of bona fide plea bargaining negotiations." (*People* v. *Tanner*, *supra*, 45 Cal.App.3d pp. 351-352.) Moreover, the rule of inadmissibility applies, not merely to admissions of guilt, but also to "any incidental statements made in the course of plea negotiations . . . ." (*Id.*, p. at 350.) That construction promotes candor, because "[t]he accused and defense counsel are assured that anything said will not be used against them if the negotiations are unsuccessful." (*People* v. *Magana* (1993) 17 Cal.App.4th 1371, 1377 [22 Cal.Rptr.2d 59].)

 While the statements at issue here were communicated in the course of plea negotiations,[6] their use below did not violate the rule of *Tanner*. There, the information obtained during the process of plea negotiations was used by the prosecution in its case-in-chief. Here, by contrast, the

---

[6]Although the statements by the defendant to Kania were not originally made in the course of plea negotiations, evidence of those statements was revealed to the prosecution in the course of plea negotiations. For purposes of the policy favoring candor in plea negotiations, the two situations are indistinguishable. In either event, the damaging information was given to the prosecution solely in the hope that a settlement would result. (Cf. *People* v. *Humiston* (1993) 20 Cal.App.4th 460, 476 [24 Cal.Rptr.2d 515] [evidence of statements made by minor to retained psychologists who testified on her behalf at a fitness hearing (Welf. & Inst. Code, § 707, subd. (a)) cannot be used as substantive evidence at trial].)

information was used only to impeach the defendant's credibility after he had first made contrary statements on direct examination in the defense's case-in-chief. The distinction is significant.

■ For instance, it has long been held that while evidence obtained in violation of the Fourth Amendment cannot be used by the prosecution in its case-in-chief, that evidence may be used to impeach contrary testimony made by a defendant on direct examination. (*Walder* v. *United States* (1954) 347 U.S. 62 [98 L.Ed. 503, 74 S.Ct. 354].) "It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths." (*Id.*, at p. 65 [98 L.Ed. at p. 507]; *People* v. *Johnson* (1989) 211 Cal.App.3d 392, 395 [259 Cal.Rptr. 388].)

■ The prosecution may also use a prior inconsistent statement to impeach a defendant's testimony, even though the statement was obtained from the defendant in violation of his rights under *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]: "Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process." (*Harris* v. *New York* (1971) 401 U.S. 222, 225 [28 L.Ed.2d 1, 4, 91 S.Ct. 643], fn. omitted.) "The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." (*Id.*, at p. 226 [28 L.Ed.2d at p. 5]; and see *People* v. *May* (1988) 44 Cal.3d 309, 315 [243 Cal.Rptr. 369, 748 P.2d 307] [following *Harris*].)

The policy considerations justifying the rules in *Walder* and *Harris* were explained in *United States* v. *Havens* (1980) 446 U.S. 620, 627 [64 L.Ed.2d 559, 566, 100 S.Ct. 1912]: "In those cases, the ends of the exclusionary rules were thought adequately implemented by denying the government the use of the challenged evidence to make out its case in chief. The incremental furthering of those ends by forbidding impeachment of the defendant who testifies was deemed insufficient to permit or require that false testimony go unchallenged, with the resulting impairment of the integrity of the factfinding goals of the criminal trial. We reaffirm this assessment of the competing interests . . . ." (*Ibid.* [holding that impeachment is allowed even if the assertedly false testimony is elicited from the defendant, not on direct examination, but in his answers to questions put to him on cross-examination that are plainly within the scope of his direct examination]; and see generally, *James* v. *Illinois* (1990) 493 U.S. 307 [107 L.Ed.2d 676, 110 S.Ct. 648].)

The policy sought to be furthered by the rule of *Tanner* is the promotion of settlements rather than the discouragement of unconstitutional searches or seizures and of unlawful interrogations. However, just as those latter goals must yield somewhat when balanced against the competing goals of preventing perjury and preserving the integrity of the truth-seeking process of the criminal trial, we find that the promotion of settlements does not justify the preclusion of effective impeachment.

The same conclusion has been reached by other courts concerning other exclusionary rules in other procedural circumstances. ■ For example, testimony by a probationer at a probation revocation hearing cannot be used to prove his guilt of the criminal charges relating to the violation, but can be used for impeachment. (*People* v. *Coleman* (1975) 13 Cal.3d 867, 889 [120 Cal.Rptr. 384, 533 P.2d 1024].) ■ Statements made to an appointed psychiatrist for purposes of a section 1368 hearing can be used to impeach a defendant in the subsequent criminal trial. (*People* v. *Stanfill* (1986) 184 Cal.App.3d 577, 581 [229 Cal.Rptr. 215]; but see *People* v. *Harris* (1987) 192 Cal.App.3d 943, 948-950 [237 Cal.Rptr. 747] [holding that impeachment not allowed].) ■ If a defendant testifies at a suppression hearing in superior court or at a suppression motion at a preliminary hearing, his testimony may not be used against him by the prosecution in its case-in-chief, but may be used to impeach the defendant's inconsistent testimony at trial. (*People* v. *Drews* (1989) 208 Cal.App.3d 1317, 1325-1326 [256 Cal.Rptr. 846].) ■ A defendant who testifies at a criminal trial may be impeached with inconsistent statements made to psychologists retained for an earlier fitness hearing. (*People* v. *Humiston, supra,* 20 Cal.App.4th at pp. 476-477.) ■ Evidence of confidential conversations obtained by eavesdropping or recording in violation of section 632 is generally inadmissible in any proceeding (§ 632, subd. (d)), but can be used to impeach inconsistent testimony by those seeking to exclude the evidence. (*Frio* v. *Superior Court* (1988) 203 Cal.App.3d 1480, 1497 [250 Cal.Rptr. 819].)

■ Accordingly, we conclude that the rule of *Tanner* — that evidence of statements made or revealed during plea negotiations may not be introduced by the People—must be limited to those situations in which those statements are offered as substantive evidence of guilt, either in the prosecution's case-in-chief or otherwise. That rule does not prevent the prosecution from using evidence of those statements for the limited purpose of impeaching the defendant regarding testimony which was elicited either during the direct examination of the defendant or during cross-examination which is plainly within the scope of the defendant's direct examination.

Applying that distinction here, the allegedly false testimony of the defendant was given during his direct examination and during proper cross-examination concerning those same factual issues. Therefore, the trial court did

not err by permitting the defendant to be impeached with evidence of his prior statements, even though that evidence had been communicated to the prosecution solely for the purpose of plea negotiations.[7]

C. *Any Error in Joining the Weapons Charge With the Molestation Charges Was Not Prejudicial.* *

. . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Ramirez, P. J., and Bigelow, J,† concurred.

Appellant's petition for review by the Supreme Court was denied January 4, 1995.

---

[7]Because the evidence at issue here fell outside of the scope of the rule of *Tanner* as we have limited it, we do not reach the question of whether that rule survived the truth-in-evidence provision of Proposition 8. (Cal. Const., art. I, § 28, subd. (d).)

*See footnote, *ante*, page 440.

†Retired judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.