Filed 5/12/15  P. v. Hall CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ERIC MONTIEL HALL,<br><br>    Defendant and Appellant. | 2d Crim. No. B252260<br>(Super. Ct. Nos. 2012031834, 2012024033)<br>(Ventura County) |

Eric Montiel Hall appeals a judgment following his conviction after jury trial of possession for sale of a controlled substance, methamphetamine (Health & Saf. Code, § 11378), and transportation of a controlled substance (*id.*, § 11379, subd. (a)).  He had five prior felony convictions and was subject to the sentencing enhancements of Penal Code section 667.5, subdivision (b).  The trial court sentenced him to an aggregate sentence of nine years, with six of those years in the county jail followed by three years of mandatory supervision.  We conclude, among other things, that the trial court did not err by:  1) admitting a 1992 prior conviction for possession of marijuana for sale, 2) excluding evidence about a remark Hall made to a probation officer, or 3) allowing the prosecutor to impeach Hall's testimony with a prior statement he made while he was in jail.  But a $2,000 fine imposed under Health and Safety Code section 11350, subdivision (d) was unauthorized.  We strike the fine.  In all other respects, we affirm.

FACTS

On September 2, 2012, Police Officer Brandon Ordelheide saw a car with a broken tail light. He "initiated a traffic enforcement stop." Hall was in the front passenger seat of the vehicle. Hall told Ordelheide that he was on "probation with search terms" and that he had a methamphetamine pipe. Ordelheide arrested him "for being in possession of narcotics paraphernalia."

When they arrived at the police station, Ordelheide opened the door of the police car. Hall "stuck his right leg out of the vehicle [and] shook his leg." Ordelheide saw "a black plastic bag fall from the bottom of [Hall's] blue jean pant leg." Inside the black bag were "13 clear plastic bags" containing "a white crystalline substance." Testing showed these bags contained methamphetamine.

The "total gross weight" of the bags was "9.01 grams." Nine of the bags weighed 0.5 grams, two weighed 0.6 grams, one weighed 1.2 grams, and one weighed 1.9 grams. The bags weighing 0.5 and 0.6 grams are called "40's" because they are packaged to be sold for "$40 on the street." The bag weighing 1.2 grams would sell for $60 to $80. The bag weighing 1.9 grams is called a "teener" and would sell for "[$]100 to $120 street value."

Police Officer Enrique Alvarez testified "most users" buy 0.5 gram bags. "It's very common." He said, "Based on the weight and the amount of baggies, it is my opinion the subject who possessed it was [in] possession for sales." He said it is "common" for drug dealers to hide drugs in their "pants."

Hall testified he did not sell methamphetamine. He used methamphetamine from June to September 2012 and was "smoking daily." He used two to "three grams a day." On September 2, he bought $20 worth of methamphetamine at an apartment complex. He got in the car "to take a hit off [his] pipe."

Hall testified that he saw Jose, a person he knew to be a "dope dealer," put "something down" between two cars in the carport of the apartment complex. Hall believed this was a "stash spot," a place where people stash "dope."

2

Hall testified, "I was hoping it was dope" in the stash spot. After Jose walked away, Hall went to the carport "between the two cars" and found the "black plastic bag." He tucked it in his "waistband" and walked back to the car. He did not know what was in the bag. He did not tell Ordelheide he had "a bag in [his] pants" because he believed it contained "something illegal."

During his testimony, Hall said he had a "useable quantity of methamphetamine" in his pipe, which he had transported from the apartment complex to the traffic stop. He admitted that this conduct was a crime.

In rebuttal, Alvarez testified a drug stash spot would not be located in a carport. Drug dealers only use a "secured area," not a place where the public would have access to it.

## DISCUSSION

### *Admission of a 1992 Prior Conviction*

Hall contends the trial court erred by allowing the prosecutor to admit evidence of his 1992 prior conviction for possession of marijuana for sale. He claims that prior conviction did not involve moral turpitude and it was too remote and prejudicial.

A defendant may be impeached by "the use of any felony conviction which necessarily involves moral turpitude, even if the immoral trait is one other than honesty." (*People v. Castro* (1985) 38 Cal.3d 301, 306.) Courts have long held that "possession of marijuana for sale involves moral turpitude." (*People v. Standard* (1986) 181 Cal.App.3d 431, 435.) Hall contends this rule is outdated and should no longer apply given "prevailing social mores." But courts have rejected this claim and have held the current legal standard remains the same as in the past. (*People v. Gabriel* (2012) 206 Cal.App.4th 450, 459.) The "potential for promoting drug trafficking[] demonstrates a readiness to do evil," and such conduct consequently involves moral turpitude. (*Ibid.*)

Hall contends the prior conviction was too remote to be admitted. We disagree.

3

Hall was convicted of possession for sale of marijuana in 1992. Remoteness is a factor the court may consider in deciding whether to exclude a prior conviction. (*People v. Green* (1995) 34 Cal.App.4th 165, 182.) Where a defendant's sole prior conviction occurred 20 years before trial, a court may exercise its discretion to exclude it. But where a defendant has committed additional offenses after that prior conviction, a trial court may admit it "because [defendant] did not subsequently lead a blameless life." (*Id.* at p. 183.)

In 1995, Hall pled guilty to three felony counts of theft. In 2005, he pled guilty to possession of a controlled substance. In 2006, he pled guilty to "unlawfully taking a vehicle" and "fleeing" from police. In 2010, he pled guilty to possession of a controlled substance. In 2011, he was convicted of petty theft with priors. Because of his pattern of committing multiple subsequent offenses, the trial court could reasonably find his 1992 conviction was not too remote. (*People v. Green*, *supra*, 34 Cal.App.4th at p. 183.)

Hall claims the admission of the 1992 prior conviction was unduly prejudicial because it "was for the same sort of offense as the current one," and it should have been excluded under Evidence Code section 352.

But "[p]rior convictions for the identical offense are not automatically excluded." (*People v. Green*, *supra*, 34 Cal.App.4th at p. 183.) Moreover, here the trial court found the probative value of admitting this evidence outweighed "the prejudicial effect." It said "crimes of possession for sale . . . [are] no more serious than what is charged here," and that the jury would not "respond emotionally" or be inclined to "disregard the evidence in the case." "[T]he admission of multiple identical prior convictions for impeachment is not precluded as a matter of law" and "a series of crimes may be more probative than a single crime . . . ." (*Ibid.*) Hall has not shown an abuse of discretion.

Hall notes the trial court admitted "*five* other priors" for "impeachment purposes." He claims the admission of the 1992 prior was error because it was "cumulative." "However, there is no limitation on the number of prior convictions with

4

which the defendant's credibility can be impeached." (*People v. Mendoza* (2000) 78 Cal.App.4th 918, 927.) The court carefully weighed the potential prejudicial impact of this evidence. Hall has not shown an abuse of discretion.

*Excluding A Prior Consistent Statement*

Hall contends the trial court erred by excluding evidence about a prior statement he made to a probation officer. He claims it was admissible to support his testimony in the defense case.

Hall's trial counsel intended to call a probation officer to testify that Hall said "he was regularly using methamphetamine." Counsel said this testimony would show "what's evident from the nature of [Hall's] previous convictions is that he is a chronic drug user and abuser." She claimed the statement is admissible "as a prior consistent statement." The trial court sustained the People's objection to this testimony.

Evidence Code section 791 provides, in relevant part, "Evidence of a statement previously made by a witness that is consistent with his testimony at the hearing *is inadmissible to support his credibility unless* it is offered after: [¶] (a) Evidence of *a statement made by him that is inconsistent with any part of his testimony at the hearing* has been admitted for the purpose of attacking his credibility, and the statement was made before the alleged inconsistent statement . . . ." (Italics added.) A prior consistent statement may also be admitted where there is a claim that the witness's testimony has been "recently fabricated or is influenced by bias or other improper motive . . . ." (*Id.*, subd. (b).)

The People contend Hall's "statement to his probation officer regarding his personal methamphetamine use was not offered to counter a prior inconsistent statement." We agree. The prosecutor said the People did not challenge the fact that Hall is "a methamphetamine user." In ruling on the objection, the trial court found Hall's claim about using methamphetamine "was not contradicted by the People."

The trial court also found the probation officer's evidence was not relevant. It said, "[T]he way the defendant's testimony stands is that he didn't know what was in

5

that bag and he was hoping it was dope or methamphetamine but he didn't know and so therefore . . . his amount of use is irrelevant . . . ."

Hall contends, "[E]ven though he didn't *know* what was in the package, evidence that he was an avid user of the narcotic was relevant to what--if anything--he intended to do with the stuff if it turned out to be what he hoped."

But the offer of proof to support Hall's position was largely general and incomplete. There were no facts showing how Hall's conduct or state of mind when he talked to the probation officer were connected to the time period of the charged offenses. The trial court said, "I can't see why his state of mind at the time he made statements to a probation officer *at some point before this incident* would be relevant." (Italics added.) In response, Hall's counsel did not offer specific facts to connect the gap in time the court mentioned. Hall has not shown error.

In any event, Hall has not shown prejudice. He has not demonstrated how the probation officer's testimony would change the result. The People note that Hall's testimony about his use of methamphetamine was "uncontested." There was also uncontradicted evidence he possessed the methamphetamine pipe. Hall had prior convictions for possession of a controlled substance. The trial court could reasonably infer the probation officer's testimony would not add anything because the jury knew Hall was a methamphetamine user. (*People v. Ervine* (2009) 47 Cal.4th 745, 784 [exclusion of defendant's prior consistent statements was not prejudicial where "they were duplicative of his trial testimony" and much of that testimony was not "contested"].)

Moreover, there was strong evidence of Hall's guilt. A defendant's concealment of a large amount of drugs individually packaged for sale constitutes "strong" evidence of possession for sale. (*People v. Velasquez* (1970) 3 Cal.App.3d 776, 787-788.) The black bag containing the 13 clear plastic methamphetamine bags fell from Hall's pants. They contained the quantities of methamphetamine drug dealers sell. Hall told Ordelheide about the pipe, but he did not mention the black bag hidden in his pants which showed his consciousness of guilt. Jurors could reasonably find Hall's action of

6

shaking his leg when he got of out the police car was an attempt to dislodge the incriminating black bag because he knew it was evidence showing his possession for sale.

The large amount of methamphetamine Hall possessed was not consistent with his prior pattern of possession for personal use. In his prior convictions for possession of controlled substances he had only small user amounts. In his 2010 conviction for possession of a controlled substance, he possessed only 1.5 grams of methamphetamine. When asked about a prior arrest for possession of cocaine, Hall testified the amount he possessed "*was never* a whole bunch." (Italics added.)

In addition, Alvarez's testimony showed Hall's story about finding the black bag in an open area carport "stash spot" was not credible. Hall said he bought drugs from Jose. But he was not able to provide Jose's "real name." When asked how old Jose was, he said, "I'm not sure." Jurors could infer Hall's testimony showed a motive to sell drugs. Hall said he did not know the contents of the black bag. But he also testified, "Whatever it was it would have turned into methamphetamine because *I would have sold it* or bartered it or traded it for some dope." (Italics added.) Hall was asked, "Have you ever sold anything you found at a stash spot?" Hall: "Yeah . . . I have sold stolen property." His testimony about not selling drugs was impeached by his prior conviction for possession of marijuana for sale.

*Proper Impeachment*

Hall contends the trial court erred by allowing the prosecutor to ask him whether he told a probation officer that he was a drug "mule." He claims there was no "foundation laid for the probation report" that contained this remark, and asking this question constituted improper cross-examination.

At trial, the prosecutor showed Hall's trial counsel a probation report which indicated that during an interview in the county jail, Hall said he "acts as a mule." Hall's counsel said, "I don't see the relevance of questioning him about being a mule." The trial court overruled the objection. It found this was "an appropriate area of cross-examination." It said, "[I]n terms of confronting the defendant with a prior statement, the

7

People have to have a good faith belief that he made the statement and you can either deny it or not. But it appears to be an appropriate area of confrontation . . . ."

During cross-examination, the prosecutor asked Hall, "Back in 2000 when speaking with a probation officer, isn't it true that you had said that in addition to stealing and many of these other things you acted as a mule?" Hall: "Never said that." Prosecutor: "A mule is somebody who transports drugs for people involved in narcotics trafficking, correct?" Hall: "That's . . . the term--yeah."

The trial court correctly said the foundation for asking this question was the prosecutor's good faith belief that Hall made this statement. It could reasonably find that belief was properly supported by the probation report. Courts have rejected claims that the People must present evidence to prove impeachment facts before they can ask the defendant the question. (*People v. Williams* (1991) 228 Cal.App.3d 146, 152 ["As long as the prosecution has a good faith belief in the existence of a prior, it may seek to use the conviction for the purpose of impeachment. A proper basis for establishing good faith is a witness's rap sheet"].) "Moreover, the requisite 'good faith' can be inferred from the record because 'the factual specificity of the prosecutor's questions implies that they were based on information obtained during the prosecution's review of records available to the defense . . . .'" (*People v. Friend* (2009) 47 Cal.4th 1, 80-81.) That is the case here. The People had the right to impeach Hall with this prior statement which tended to contradict his trial testimony. (*People v. Macias* (1997) 16 Cal.4th 739, 756; *People v. Crow* (1994) 28 Cal.App.4th 440, 452.) He has not shown error.

*The $2,000 Fine*

Hall notes that the trial court's minute order includes the statement: "Pursuant to Section 11350(d) of the Health and Safety Code, you shall pay a fine of $2000.00 . . . ." But at the sentencing hearing, the court did not impose any fine under this section. The People agree that the record shows the court "did not orally impose the fine."

Hall claims the $2,000 fine is unauthorized and must be stricken. He is correct. (*People v. Mesa* (1975) 14 Cal.3d 466, 472 [the oral pronouncement of sentence

8

governs].) The People agree that the $2,000 fine must be stricken. They claim "[s]ince appellant was not convicted under section 11350, the fee provision in section 11350 does not apply to him."

We have reviewed Hall's remaining contentions and we conclude he has not shown any other error.

The $2,000 fine is stricken. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.



GILBERT, P.J.

We concur:


YEGAN, J.


PERREN, J.

9

Patricia M. Murphy, Judge

Superior Court County of Ventura

_____

John Derrick, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell, Supervising Deputy Attorney General, Eric E. Reynolds, Deputy Attorney General, for Plaintiff and Respondent.