Filed 4/20/26  V.S. v. P.D. CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| V.S., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> P.D., <br><br> Defendant and Appellant. | D086096 <br><br><br> (Super. Ct. No. 23FL011212C) |

APPEAL from orders of the Superior Court of San Diego County, Rebecca G. Church, Judge.  Affirmed.

P.D., in pro. per., for Defendant and Appellant.

Cage & Miles and John T. Sylvester, for Plaintiff and Respondent.

In this family law matter, P.D. (Father) appeals from orders regarding child custody, child support and awards of attorney fees, as well as a motion for reconsideration.

We conclude that Father's appeal is without merit, and accordingly we affirm the orders from which Father appeals.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Father and V.S. (Mother) share a minor daughter, born in 2022 (the Child).

On November 16, 2023, Mother filed a request for order seeking child custody and visitation. That request for order is not included in the appellate record. An evidentiary hearing took place on August 27, 2024, September 10, 2024, September 12, 2024, September 17, 2024, and September 19, 2024. Both Father and Mother were represented by counsel. The appellate record contains reporter's transcripts from each day of the evidentiary hearing *except for* September 10, 2024. The appellate record does not contain any of the numerous exhibits admitted into evidence during the evidentiary hearing.[1]

---

[1] On October 24, 2025, Father filed a motion to augment the appellate record with certain documents. On October 29, 2025, we issued an order stating that, with respect to Exhibits A–F and L–N, the request to augment would be considered concurrently with this appeal. We hereby deny Father's request to augment the record with Exhibits A–F and L–N. "Augmentation does not function to supplement the record with materials not before the trial court." (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444.) Based on the dates that appear on Exhibits A, B, C, F, L, M, N and O, those documents did not yet exist at the time of the evidentiary hearing and thus could not have been made part of the trial court record at that time. Exhibit D is a private investigator's report that is dated prior to the evidentiary hearing. Exhibit E consists of screenshots of certain text messages from 2023 and 2024, next to which Father has added typewritten argumentative comments for our benefit. However, based on our review of the reporter's transcripts from the evidentiary hearing, there is no indication that either Exhibit D or E was introduced into evidence at the evidentiary hearing. Father has also not presented us with any indication that any of Exhibits A–F and L–N were made part of the trial court record in connection with the matters heard by the trial court on February 18, 2025.

On September 19, 2024, at the conclusion of the evidentiary hearing, the trial court made findings and ruled on child custody and child support. It also awarded attorney fees to Mother. Those findings and rulings were later set forth in a written order dated October 25, 2024.

The trial court found that Father perpetrated domestic violence within the meaning of the Domestic Violence Prevention Act (Fam. Code, § 6200 et seq.) and that Mother had not engaged in such conduct. The trial court further found that Father had not rebutted the presumption set forth in Family Code section 3044 that "an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child." The trial court awarded Mother sole legal custody. The Child's primary residence would be with Mother, with visitation for Father every other weekend, as well as during a two-week vacation after the completion of a certified domestic violence program. The trial court ordered Father to pay monthly child support in specific amounts for specific time periods, including arrears, and to pay $30,000 of Mother's attorney fees pursuant to Family Code section 7605 based on a disparity in access to funds.

On October 15, 2024, while no longer represented by counsel, Father filed a request for an order seeking a modification of child custody, visitation and support, as well as a motion for reconsideration of the orders that the trial court made following the evidentiary hearing. The appellate record does not include any of the moving papers filed by Father, any responsive filings by Mother, or any of the exhibits that the trial court reviewed in connection with the matter. At a hearing on February 18, 2025, the trial court considered Father's requests and ruled on them. The trial court subsequently issued a written order dated March 25, 2025.

The trial court denied Father's motion for reconsideration, finding no legal basis to support it. In connection with that ruling, the trial court denied Father's request to present testimony from three new witnesses. The trial court also denied Father's request to modify child custody and visitation, concluding it had no basis to do so and that such an order was not in the best interest of the Child.

With respect to child support, the trial court corrected an error regarding the timeshare percentage used in the DissoMaster calculation. As a result of that correction, Father's monthly child support payment for the period beginning October 1, 2024, was increased from $1,758 to $1,885. Based on evidence that Father had recently become unemployed, the trial court reduced Father's child support obligation to zero effective December 1, 2024, although it reserved jurisdiction over retroactivity on that issue. The trial court awarded attorney fees to Mother in the additional amount of $10,000 pursuant to Family Code sections 7605 and 3044, and it declined to reduce the amount of the prior attorney fee award.

On April 8, 2025, Father filed a notice of appeal, which stated that he was appealing from orders dated October 25, 2024, November 7, 2024, and March 25, 2025. We subsequently issued an order stating that the appeal may proceed as to the orders dated October 25, 2024, and March 25, 2025.

## II.
## DISCUSSION

Representing himself without counsel, Father challenges both the October 25, 2024 and March 25, 2025 orders. We discuss each order in turn.

4

A.    *The Trial Court's October 25, 2024 Order*

    1.    *Challenges to Evidentiary Rulings*

Many of Father's arguments regarding the October 25, 2024 order center on his contention that the trial court (1) improperly admitted certain evidence introduced by Mother, and (2) improperly failed to admit other evidence favorable to Father.  According to Father, in the absence of those purported errors, he would have obtained a more favorable outcome.  As we will explain, Father's argument fails on multiple grounds.

First, to obtain reversal, Father must do more than identify evidentiary errors committed by the trial court; he must also show that those errors were prejudicial.  "Claims of evidentiary error under California law are reviewed for prejudice applying the 'miscarriage of justice' or 'reasonably probable' harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818, 836, that is embodied in article VI, section 13 of the California Constitution.  Under the *Watson* harmless error standard, it is the burden of appellants to show that it is reasonably probable that they would have received a more favorable result at trial had the error not occurred."  (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 447.)

Here, Father has not provided us with an adequate record of the proceedings during the evidentiary hearing that resulted in the October 25, 2024 order.  Specifically, we have not been provided with any of the admitted exhibits, and we are missing the reporter's transcript from one day of the proceedings.  "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment."  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609

5

(*Jameson*).) " 'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Id.* at p. 609.) " ' "A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." ' " (*Ibid.*) Because we do not have adequate information about what occurred during the evidentiary hearing, we are unable to assess whether it is reasonably probable that Father would have received a more favorable result at trial had the alleged evidentiary errors not occurred. Accordingly, Father has defaulted on his contention that reversal is warranted due to any evidentiary errors.

Second, as we will explain, Father's challenges to the trial court's evidentiary rulings are without merit.

a. *Report to Child Welfare Services*

Father first argues that the trial court improperly admitted into evidence a report made to Child Welfare Services. Citing Welfare and Institutions Code section 827 and California Rules of Court, rule 5.552, Father argues that the document should not have been admitted into evidence because it was not served on him, he did not have time to object to it, and no court ordered that it be disclosed.

Welfare and Institutions Code section 827 describes the circumstances under which a "juvenile case file" may be released. "[A] 'juvenile case file' means a petition filed in a juvenile court proceeding, reports of the probation officer, and all other records, including any writing as defined in Section 250 of the Evidence Code, or electronically stored information relating to the minor, that is filed in that case or made available to the probation officer in making the probation officer's report, or to the judge, referee, or other hearing officer, and thereafter retained by the probation officer, judge,

6

referee, or other hearing officer." (Welf. & Inst. Code, § 827, subd. (e).) Rule 5.552 of the California Rules of Court sets forth procedures for requesting access to a juvenile delinquency case file. Neither provision describes the requirements for release of a report made to Child Welfare Services.

Further, the reporter's transcript shows that Father's counsel did not object to the admission of the report on the basis that Father now identifies on appeal. Instead, counsel objected based on hearsay, and the trial court ruled that it would admit the report only as to any of Father's and Mother's statements contained therein. Because an objection was not made in the trial court on the ground that Father now asserts on appeal, the argument has been forfeited. (*People v. Gomez* (2018) 6 Cal.5th 243, 286 (*Gomez*) ["Reviewing courts will generally not consider a challenge to the admissibility of evidence unless there was a ' " 'specific and timely objection in the trial court on the same grounds sought to be urged on appeal.' " ' "].)

b. *Audio Recording Made by Mother*

Next, Father argues that the trial court improperly considered an audio recording by Mother of a violent incident between her and Father. During the evidentiary hearing, Father's counsel objected to the admission of the recording based on Penal Code section 632, and the trial court excluded it on that basis.[2] However, the trial court did allow Mother's counsel to use the recording as impeachment during Father's testimony. Apparently not understanding the difference between the use of the recording for impeachment purposes and the admission of the recording into evidence,

---

[2]    Penal Code section 632 provides that an electronic recording of a confidential communication is "not admissible in any judicial, administrative, legislative, or other proceeding" if the recording is made "without the consent of all parties to a confidential communication." (Pen. Code, § 632, subds. (a), (d).)

7

Father contends that "the existence of the recording was exploited and improperly introduced." The argument fails. The trial court properly ruled that the recording could be used for impeachment during Father's testimony. (*People v. Crow* (1994) 28 Cal.App.4th 440, 452 ["Evidence of confidential conversations obtained . . . in violation of [Penal Code] section 632 . . . can be used to impeach inconsistent testimony by those seeking to exclude the evidence."].) Moreover, because Father's counsel did not object to the use of the recording for impeachment purposes, Father may not raise the objection for the first time on appeal. (*Gomez, supra*, 6 Cal.5th at p. 286.)

    c.  *Video Recording Showing an Exchange of the Child*

Finally, Father contends that the trial court improperly failed to admit evidence of a video recording showing the conduct of the Child's maternal grandmother during an exchange of the Child between Father and Mother. This argument fails because the reporter's transcript does not reflect any request by Father's counsel to admit that video into evidence. Instead, counsel took the approach of having a witness to the events describe what she observed. Further, to show their effect on the listener, the trial court allowed that witness to testify about statements that she heard Mother and Father make during the incident. Because Father's counsel did not request that the video be admitted into evidence, the trial court could not have erred in failing to admit it.

    2.  *Challenge to Domestic Violence Finding*

Father challenges the trial court's finding that he perpetrated domestic violence. As we have explained, that finding raised a rebuttable presumption that "an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child." (Fam. Code, § 3044, subd. (a).)

Father argues that the finding was improper because "[t]here was no conviction, no charges filed, no law enforcement action, and no protective order." The argument lacks merit. "When a court makes a finding that a party has perpetrated domestic violence, the court . . . shall consider any relevant, admissible evidence submitted by the parties." (Fam. Code, § 3044, subd. (e).) Although the statute allows the trial court to rely on evidence that the party has been convicted of domestic violence in the last five years (Fam. Code, § 3044, subd. (d)(1)), nothing in the statute limits the type of evidence that the trial court may consider.

In his reply brief, Father argues that the trial court failed to make certain specific findings regarding domestic violence that he believes are required by statute. However, that argument depends on a misreading of the statute. Father refers to specific findings the trial court must make if it determines that the presumption set forth in Family Code section 3044, subdivision (a) has been *rebutted*. (Fam. Code, § 3044, subd. (f)(2) ["If the court determines that the presumption in subdivision (a) has been overcome, the court shall state its reasons in writing or on the record as to why paragraph (1) of subdivision (b) is satisfied and why the factors in paragraph (2) of subdivision (b), on balance, support the legislative findings in Section 3020."].) Here, because the trial court did *not* find the presumption to have been rebutted, the provision does not apply.

Father also argues that the evidence was insufficient to support the trial court's finding that he perpetrated domestic violence, and that the trial court should not have credited certain evidence. Father has forfeited his argument regarding the sufficiency of the evidence because he has not provided an adequate record for us to evaluate it. (*Jameson, supra*, 5 Cal.5th at p. 609.) Further, it is not our role as an appellate court to "reweigh the

9

evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." (*In re Caden C.* (2021) 11 Cal.5th 614, 640.)

B.      *The Trial Court's March 25, 2025 Order*

The order issued on March 25, 2025 covered several issues: (1) Father's motion for reconsideration of the October 25, 2024 order; (2) Father's request to modify child support and custody; and (3) an award of attorney fees to Mother. On appeal, Father challenges the ruling on all three issues.

1.      *Denial of the Motion for Reconsideration*

In his appellate challenge to the trial court's ruling on the motion for reconsideration, Father focuses on the trial court's ruling rejecting his request to present testimony from three witnesses at the February 18, 2025 hearing.

Because the appellate record does not contain Father's motion for reconsideration, it is not clear whether Father identified those three witnesses in his moving papers and presented argument as to why their testimony should be allowed. Our discussion is accordingly limited to the information presented by Father at the February 18, 2025 hearing.

At that hearing, Father identified three witnesses from whom he wanted to elicit testimony in connection with the motion for reconsideration: (1) a private investigator; (2) a Master Sergeant from the Marine Corps and (3) his sister. The trial court asked whether the motion for reconsideration was based on new evidence or different facts that were not available during the evidentiary hearing, and whether there was a reason that the evidence was not presented earlier. Father did not claim that he had any new evidence that was not previously available. Instead, he stated that his attorney had failed to "submit critical evidence" on his behalf at the evidentiary hearing. The trial court ruled that Father had not satisfied the

10

legal requirements to obtain reconsideration of the October 25, 2024 ruling.[3]
The trial court then explained that, having denied the motion for
reconsideration, there was no basis to allow Father to present testimony from
the three witnesses.

Father's appellate briefing does not address the requirements for a
motion for reconsideration, and he therefore does not attempt to argue that
he satisfied those requirements. Instead, Father makes a general argument,
unsupported by legal authority, that the trial court erred because it did not
permit him to present testimony from his proffered witnesses.[4]

---

[3] In making its ruling on the motion for reconsideration, the trial court
cited Code of Civil Procedure 473, subdivision (b) rather than Code of Civil
Procedure section 1008. Code of Civil Procedure section 473, subdivision (b)
states that "[t]he court may, upon any terms as may be just, relieve a party or
the party's legal representative from a judgment, dismissal, order, or other
proceeding taken against the party through the party's mistake,
inadvertence, surprise, or excusable neglect." Code of Civil Procedure section
1008, subdivision (b) states "[a] party who originally made an application for
an order which was refused in whole or part, or granted conditionally or on
terms, may make a subsequent application for the same order upon new or
different facts, circumstances, or law, in which case it shall be shown by
affidavit what application was made before, when and to what judge, what
order or decisions were made, and what new or different facts, circumstances,
or law are claimed to be shown." Because the appellate record does not
contain Father's motion for reconsideration, it is not clear what statutory
provision Father relied upon for his motion.

[4] Although it is unclear from Father's appellate briefing, it appears that
Father also intends to challenge the trial court's ruling on the motion for
reconsideration insofar as it precluded him from presenting additional
documentary evidence, such as a report created by the private investigator.
Because the record does not contain Father's motion for reconsideration, we
are unsure of what, if any, documentary evidence Father proposed to present
in connection with the motion for reconsideration.

"In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record. . . . [Citations.] Similarly, we may disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions [it] wants us to adopt." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287.) " 'Mere suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review.' " (*Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1457.) Because Father has not presented any legal argument to support his contention that the trial court erred by denying his motion for reconsideration or by thereafter ruling that it would not allow the three witnesses to testify, Father has failed to meet his burden to establish that the trial court erred.

2. *Ruling on Child Support*

Father takes issue with the child support rulings that the trial court made in the March 25, 2025 order.

First, Father contends that the trial court erroneously increased the amount of child support for the months of October and November 2024 from $1,758 to $1,885. Father believes that the increase was "based solely on the argument by [Mother's] counsel that [Father] had 'earning potential,' " and he takes issue with the increase on that basis. Father is mistaken in his understanding of the basis for the trial court's order. The record establishes that the increase was due to the correction of an error in the prior DissoMaster calculation that used an inaccurate timeshare percentage. Accordingly, Father's argument focusing on his " 'earning potential' " is without merit.

12

Next, as we have explained, for the period beginning December 1, 2024, the trial court reduced Father's child support payments to zero based on his newly-unemployed status. Father appears to contend the trial court erred in failing to take into account his loss of employment when setting the amount of child support. Father contends that Mother was the cause of his unemployment because she purportedly "repeatedly contacted [Father's] Marine Corps Command and made unfounded claims against him."[5]

Father's argument with respect to the child support award after he lost his employment is without merit because the record shows that the trial court *did* take into account Father's loss of employment by modifying child support to zero. Moreover, without the moving papers or exhibits related to the February 18, 2025 hearing, it is not clear what legal significance Father attempted to assign, in the trial court, to Mother's alleged interference with his employment. Father's appellate briefing also does not identify legal authority to establish that those allegations have any significance to the issues decided by the trial court in the March 25, 2025 order.

3. *Attorney Fee Award*

Finally, Father challenges the trial court's order requiring him to pay Mother's attorney fees. As we have explained, in the October 25, 2024 order, the trial court awarded Mother $30,000 in attorney fees, and in the March 25,

---

[5] The appellate record contains no evidence to support Father's allegation that Mother's actions led to Father's unemployment. A declaration from a Marine Corps Master Sergeant, which Father included as Exhibit C to his October 24, 2025 motion to augment, concerns that issue. However the declaration was created in July 2025, long after the orders from which Father appeals. Accordingly, as discussed in footnote 1, *ante*, we have rejected Father's request to augment the record with that document. Nevertheless, as we explain, Father's challenge to the child support award lacks merit regardless of the lack of evidentiary support for his contention that Mother was the cause of his unemployment.

13

2025 order, the trial court awarded Mother $10,000 in attorney fees. The awards were based on the disparity in the parties' access to funds and Father's ability to pay.

Referring to these two awards collectively, Father argues that the trial court erred in making the fee awards because it failed to take into account Father's "undisputed debt load and lack of stable income," while ignoring Mother's "family support and stable living arrangements."

Although Father's challenge to the amount of the attorney fee awards is based on his contention that, due to the parties' respective financial circumstances, the trial court erred, the appellate record does not contain relevant evidence regarding the parties' financial circumstances. Among other things, the appellate record contains none of the parties' income and expense declarations that were presented to the trial court. Without an adequate record concerning the parties' financial circumstances, we are unable to assess whether there is any merit to Father's challenge to the attorney fee award. Accordingly, Father has forfeited that argument. (*Jameson, supra*, 5 Cal.5th at p. 609.)

DISPOSITION

The trial court's orders of October 25, 2024 and March 25, 2025 are affirmed.  Mother shall recover her costs on appeal.


McCONNELL, P. J.

WE CONCUR:


O'ROURKE, J.


RUBIN, J.

15